530 F.2d 539
 11 Fair Empl.Prac.Cas. 836,
11 Empl. Prac. Dec. P 10,710
 David WILLIAMS and Junius B. Russell, Appellants,
v.
NORFOLK AND WESTERN RAILWAY CO., and Local 1889, United
Transportation Union, Appellees.
 
 No. 74--1549.
 United States Court of Appeals,
Fourth Circuit.
 Argued Dec. 6, 1974.
Decided Sept. 23, 1975.
 Howard I. Legum, Norfolk, Va. (Fine, Fine, Legum & Fine, Norfolk, Va., on brief), for appellants.
 James T. Turner, Norfolk, Va. (Williams, Worrell, Kelly & Worthington, Norfolk, Va., on brief), for Norfolk & W. Ry. Co.
 Walton G. Bondurant, Jr., Richmond, Va. (Willard J. Moody, Moody, McMurran & Miller, Portsmouth, Va., on brief), for Local 1889, United Transp. Union.
 Before HAYNSWORTH, Chief Judge, and BUTZNER and FIELD, Circuit Judges.
 BUTZNER, Circuit Judge:
 
 
 1
 In Rock v. Norfolk & Western Ry., 473 F.2d 1344 (4th Cir. 1973), we ordered the dovetailing of the separate seniority rosters of the railroad's black barney yard and white CT yard in Norfolk, Virginia. David Williams and Junius B. Russell, two black barney yard brakemen, claim that their seniority on the new roster should date from the time they began working at the Virginian Railroad Company, which later merged with the Norfolk & Western. Because they were not granted the same seniority as white Virginian brakemen, they charge a violation of their rights under the Civil Rights Acts of 1866 and 1964. Although the district judge could have consolidated this case with Rock, over which he was also presiding, he did not do so. See Fed.R.Civ.P. 42. We find no error in this, and we shall treat the cases separately without remanding for consolidation.
 
 
 2
 The district court dismissed the suit, ruling that the statute of limitations barred any cause of action under § 1981, Title VII's jurisdictional requirements had not been met, there had been no racial discrimination, and the cause of action was barred by accord and satisfaction and release. We reverse and hold that § 1981 and Title VII require Norfolk & Western to recompute Williams' and Russell's seniority just as it computed the seniority of white brakemen who formerly worked at the Virginian.
 
 
 3
 The case arises out of the merger on December 1, 1959, of the Norfolk & Western and the Virginian. Each railroad previously had maintained two yards in Norfolk, Virginia--a CT yard which handled all types of freight, and a barney yard which handled only coal shipments. With few exceptions, the brakemen in the barney yards were black, and those in the CT yards were white. When the two railroads merged, the seniority rosters of all crafts, except those in the barney yards, were dovetailed. Thus, white brakemen from the Virginian carried their Virginian seniority with them. The unions representing the barney yard employees, however, did not reach an agreement with each other or with the company to dovetail the black brakemen's seniority rosters. Consequently, if a black Virginian brakeman were to continue working, his seniority, for most purposes, would date from his employment with Norfolk & Western, not from his Virginian date of hire.
 
 
 4
 In order to satisfy the Interstate Commerce Commission, the two railroads and the bargaining representative for Williams and Russell stipulated that if the seniority rosters of the barney yard employees could not be dovetailed, the employees should receive compensatory benefits. Ultimately, 80 of the 82 Virginian barney yard employees chose to resign from railway service and accept a settlement in lieu of continued employment at the Norfolk & Western. Only Williams and Russell refused to quit. Williams had more than 13 years' seniority at the Virginian and Russell at least 19 years, but they decided to work at the Norfolk & Western even though they had to relinquish this seniority. Because they could not utilize their Virginian seniority, they were not put on the payroll until November 1, 1960, eleven months after the merger. Their new seniority began on this date. As compensation, they received a lump sum equal to three months' pay and a guarantee of five years' employment. In return, pursuant to the bargaining agreement, they released the Norfolk & Western and the Virginian from any claims arising out of the merger or out of the conditions imposed by the Interstate Commerce Commission.
 
 
 5
 * Russell retired on November 1, 1967, but Williams is currently employed in the barney yard. Both men filed charges with the Equal Employment Opportunity Commission on June 22, 1969, as required by 42 U.S.C. § 2000e--5(e). Within 90 days after notification of their right to sue, they filed this action on January 29, 1973.
 
 
 6
 Section 1981 does not have its own limitation period; instead, it borrows the analogous state limitation, which we have determined is two years in Virginia. Allen v. Gifford, 462 F.2d 615 (4th Cir. 1972); Almond v. Kent, 459 F.2d 200 (4th Cir. 1972). Title VII charges must be filed within 180 days after the occurrence of the alleged unlawful employment practice, and an award of back pay is restricted to the two years preceding the charge. 42 U.S.C. § 2000e--5(e) and (g).
 
 
 7
 Russell's § 1981 claim is barred because he retired more than two years before instituting suit. Johnson v. Railway Express Agency, Inc., 421 U.S. 454, 95 S.Ct. 1716, 44 L.Ed.2d 295 (1975). The company urges us to sustain the district court's dismissal of Williams' § 1981 claim and both employees' Title VII claim as untimely because the discrimination, if any, occurred in 1960 when they were hired by Norfolk & Western. This argument, however, misconceives the nature of their complaint.
 
 
 8
 The cause of action Williams and Russell assert is not based on their loss of seniority with respect to the black barney yard in 1960. Instead, they complain that their exclusion from the CT yard because of their race deprived them of the benefits of their Virginian seniority, while white brakemen from the Virginian were allowed to transfer their seniority. The relief they seek is parity with their white counterparts from the Virginian.
 
 
 9
 We have no occasion to narrate the evidence concerning the Norfolk & Western's employment of black and white brakemen. The record discloses the same situation described in Rock v. Norfolk & Western Ry., 473 F.2d 1344 (4th Cir. 1973), where we held that the company violated Title VII. Its unlawful employment practices extended beyond the critical dates for filing charges and instituting this action under § 1981 and Title VII. Williams and Russell challenge this continuous discrimination rather than any single discriminatory act. Consequently, neither the two-year statute of limitations applicable to § 1981 nor the 180-day limitation of Title VII bars this action. Macklin v. Spector Freight Systems, Inc., 156 U.S.App.D.C. 69, 478 F.2d 979, 994 (1973); Cox v. United States Gypsum Co., 409 F.2d 289, 290 (7th Cir. 1969); Tippett v. Liggett & Myers Tobacco Co., 316 F.Supp. 292, 295 (M.D.N.C.1970); see Johnson v. Railway Express Agency, Inc., 421 U.S. 454, 467, 95 S.Ct. 1716, 44 L.Ed.2d 295 n. 13 (1975) (dictum).
 
 II
 
 10
 We find no merit in the company's defense that Williams and Russell were not the victims of racial discrimination. As our analysis of the evidence in Part I demonstrates, they were denied, because of their race, the same seniority that white Virginian brakemen received. Racial discrimination barred them from work in the CT yard and relegated them to the barney yard where their Virginian seniority was not recognized. Had they been white, they would have received the full benefits of their Virginian seniority. Their inferior rank with respect to white brakemen from the Virginian persists. Thus, even if Williams and Russell had been granted equal seniority with the Norfolk & Western black barney yard employees, they could not have acquired seniority in the CT yard equal to that of their white counterparts. It is this inequality which is the gravamen of their Title VII claim.
 
 
 11
 The Norfolk & Western has already recognized that white brakemen from the Virginian are entitled to greater seniority than those with less employment seniority who were hired at the Norfolk & Western before the merger. According the same benefits of Virginian seniority to Williams and Russell will also advance their seniority over some brakemen who started working for the Norfolk & Western before it merged with the Virginian. But this circumstance presents no greater obstacle to granting relief now than did the earlier acceptance of the white brakemen's Virginian seniority. The Norfolk & Western brakemen, whether black or white, have no vested interest in their seniority that precludes the application of laws designed to eradicate racial discrimination. United States v. Bethlehem Steel Corp., 446 F.2d 652, 663 (2d Cir. 1971); Robinson v. Lorillard Corp., 444 F.2d 791, 800 (4th Cir. 1971).
 
 
 12
 Similarly, the merger agreements negotiated in 1959 and 1960 by the railroads and the unions with the approval of the Interstate Commerce Commission do not bar relief. Seniority systems that are based on collective bargaining agreements made before the enactment of the Civil Rights Act of 1964 have been held to violate the Act if they perpetuate racial discrimination. United States v. St. Louis-San Francisco Ry., 464 F.2d 301, 309 (8th Cir. 1972); Robinson v. Lorillard Corp., 444 F.2d 791, 799 (4th Cir. 1971). Moreover, the bargaining agreements are subject to the remedial provisions of the Act, even though the discrimination they perpetuate was incubated by a federal agency. United States v. Chesapeake & Ohio Ry., 471 F.2d 582, 592 (4th Cir. 1972); United States v. Jacksonville Terminal Co., 451 F.2d 418, 454 (5th Cir. 1971).
 
 
 13
 The receipt each appellant signed to implement the agreement reached by the railroad and the union was not a surrender of his right to be free from racial discrimination, whether it be termed an accord and satisfaction or a release. The genesis of this agreement was the merger of the railroads, but the merger was not the cause of the racial discrimination from which Williams and Russell now seek relief. In 1960 the yards of both railroads were segregated, and it was the employees' race, not the merger, that denied them more favorable employment in the CT yard with the same seniority as their white co-workers. The company and the union did not negotiate about this discrimination, and the Interstate Commerce Commission did not require them to do so. The 1960 agreement and the compensation paid to Williams and Russell dealt only with their barney yard seniority, not their seniority in relation to white brakemen, which is the subject of their present claim. In Robinson v. Lorillard Corp., 444 F.2d 791, 799 (4th Cir. 1971), we held, 'The rights assured by Title VII are not rights which can be bargained away--either by a union, by an employer, or by both acting in concert.' We conclude, therefore, that Williams and Russell are entitled to take their rightful place on the new, dovetailed seniority roster with their seniority computed in the same manner that the Norfolk & Western fixed the rank of white brakemen from the Virginian.
 
 
 14
 The district court recognized that Williams and Russell are members of the Rock class. Therefore, we will not prescribe the relief to which they are entitled other than to say that they should be treated as other members of the class after their seniority has been adjusted as we have directed.
 
 
 15
 Local 1889 was properly joined as a defendant since it was the bargaining agent for Williams and Russell. However, it is not liable to them because, as a plaintiff in Rock under its former designation as Local 974, it fought the same discriminatory system of segregated yards which injured Williams and Russell.
 
 
 16
 Williams and Russell shall recover their costs and a reasonable attorney's fee from the railroad. The judgment of the district court is vacated, and this case is remanded for further proceedings consistent with this opinion.
 
 FIELD, Circuit Judge (dissenting):
 
 17
 In my opinion the majority has seen fit to counternance a maverick piece of litigation, and in doing so has placed some bad law on the books for this circuit.
 
 
 18
 First of all, the reason for my characterization of this lawsuit as maverick. Following the merger of the Virginian Railway Company and the Norfolk & Western in 1959, the two plaintiffs, former employees of the Virginian, elected to accept employment with the Norfolk & Western and commenced work on November 1, 1960. Incident to such employment they became members of the all-black Norfolk & Western barney yard Union, Local 974, which later became Local 1889 of the United Transportation Union. At the time of the merger and for several years thereafter the employees in the Norfolk & Western CT yard were practically all white and were represented by Local 550 which later became Local 678 of the United Transportation Union. In June of 1969 the employees of the barney yard and Local 974 instituted a Title VII action against both the railroad and Local 550 challenging the discriminatory employment practices and disparity of employment opportunities allegedly existing between the barney yard and CT yard. In that case the district court found that the Norfolk & Western had violated the Act by its hiring and job assignment practices and ordered the railroad to discontinue such practices. Among other remedies the court ordered that the seniority rosters of the two yards be merged and that the two union locals be merged into one. Both sides appealed that order, the appeal being heard and decided in this court sub nom. Rock v. Norfolk & Western Railway Co., 473 F.2d 1344 (1972). By opinion filed on February 13, 1973, this court remanded the case to the district court for its further consideration of appropriate remedies, including the issue of the allowance of back-pay.
 
 
 19
 The two plaintiffs were members of the class in Rock and at least one of them actively participated in the trial proceedings of that case. Despite the pendency of the Rock litigation and while that case was sub judice in this court, the plaintiffs filed this action on January 30, 1973, charging the Norfolk & Western and Local 1889 (successor of Local 974) with racial discrimination in violation of Title VII of the 1964 Civil Rights Act, as well as Section 1981. As will hereafter be shown, the complaint in the present case was based upon events which allegedly occurred at the time of the Norfolk & Western-Virginian merger in 1959 and 1960, and basically the plaintiffs sought to have their seniority on the Norfolk & Western roster adjusted to give them the benefit of their date of hire with the Virginian. Although the complaint in this case and the trial in the district court were addressed to acts incident to the merger, on this appeal counsel for plaintiffs saw fit to focus upon the very matters which were in controversy in Rock, that is, the charge of discrimination and disparity in employment practices existing between the all-black barney yard and the all-white CT yard. The majority, accepting this ploy of the appellants lock, stock and barrel, states that the plaintiffs' cause of action 'is not based on their loss of seniority with respect to the black barney yard in 1960,' but rather 'that their exclusion from the CT yard because of their race deprived them of the benefits of their Virginian seniority * * *.'[1] The majority goes on to state that '(t)he record discloses the same situation described in (Rock).' In all deference, I find little support in the record for this statement of the majority and it is significant that the district judge in this case (who is the same judge who has contended with Rock for some six years) clearly recognized the distinction between the two cases when he observed in his opinion:
 
 
 20
 'Finally, and it is not clear, if plaintiffs claim racial discrimination in the overall concept of barney yard employment as opposed to General Classification Yard employment--black versus white--this problem is before this Court in a pending class action suit, already once in the United States Court of Appeals for the Fourth Circuit, and now on remand, Rock, et al. v. Norfolk & Western Railway Company, et al., Civil Action No. 255-69--N. Discrimination at that level will be appropriately handled in that case.
 
 
 21
 Assuming, arguendo, that the majority's concept of the nature of the plaintiffs' complaint is correct, I submit that this case should long since have been dismissed for the reason that in such a posture it represents nothing but an attempt to litigate in this action the very issues confronting the district court in Rock, and the net result of the majority decision is to permit the plaintiffs to obtain a seniority position on the Norfolk & Western roster which properly should have been established by them in the Rock litigation. The hybrid nature of this case is tacitly recognized by the majority when it declines to prescribe the relief to which the plaintiffs are entitled 'other than to say that they should be treated as other members of the (Rock) class after their seniority has been adjusted as we have directed.' Such a directive, I submit, is an unwarranted intrusion upon the orderly disposition of the concededly complex and difficult issues in Rock.[2] One of the problems confronting the court in that case is the hypersensitive question of seniority, and the majority opinion, in effect, permits the plaintiffs to utilize the present case to peg their positions on the roster and obtain what is tantamount to an ex parte preference over the other Rock seniority aspirants who are not parties to this litigation and have had no opportunity to be heard. As parties to the Rock litigation the plaintiffs should be collaterally estopped from pursuing their claims in this fragmented fashion.
 
 
 22
 To realistically understand the nature of this lawsuit as it was filed, tried and decided in the district court, it is necessary to have some factual recital in addition to the cryptic references in the majority opinion. The merger of the Norfolk & Western and Virginian took place on December 1, 1959, almost five years before the effective date of the 1964 Civil Rights Act. Prior to the merger the plaintiffs were employed in the barney yard of the Virginian and were represented by Local 67 of the Association of Railway Trainmen and Locomotive Firemen (ART & LF). The barney yard employees of the Norfolk & Western were represented by Local 974, which, as heretofore noted, was the predecessor of Local 1889 of the United Transportation Union. Incident to the merger the personnel of the Virginian in every other railway craft, black and white, were quietly absorbed into the Norfolk & Western operation taking with them their Virginian hire date as the basis of seniority on the merged roster. This was not true, however, as to the merger of the barney yard personnel of the Norfolk & Western and the Virginian, the two barney yards for all practical purposes being one hundred per cent black. The district judge made a specific finding of fact which is solidly supported by the record that the Norfolk & Western and the Virginian, as well as ART & LF, made every effort to dovetail the two barney yard rosters on a date of hire basis, but the negotiations were fruitless due to the refusal of the members of the Norfolk & Western barney yard and Local 974 to accede to such a plan.
 
 
 23
 Negotiations between the two black unions reached an impasse and finally, in January of 1960, an implementing agreement, as required by the Interstate Commerce Act, 49 U.S.C. § 5(2)(f), was signed with Norfolk & Western by ART & LF acting on behalf of the Virginian barney yard employees. This agreement provided for substantial lump sum severance payments to all former employees of the Virginian barney yard who desired to accept such compensation and resign from railway service. Eighty out of the total of eighty-two Virginian employees accepted this severance benefit and received substantial payments averaging about $5,000.00 per man. The only two Virginian employees who did not see fit to avail themselves of these benefits were the two plaintiffs in the present case. Thereupon the Norfolk & Western and the ART & LF, the latter acting on behalf of the plaintiffs, entered into a final implementing agreement on October 28, 1960, which provided that the Norfolk & Western would employ the two plaintiffs in its barney yard and would guarantee them an annual stated wage for a period of five years; additionally, the plaintiff Williams would receive a lump sum payment of $1,249.83 and Russell a payment of $1,280.52. The agreement provided that these considerations were accepted 'in full satisfaction of all claims and demands * * * on behalf of the foregoing employees (Williams and Russell).' The district judge made a finding of fact that the plaintiffs accepted the lump sum payments and went to work for the Norfolk & Western on November 1, 1960, 'fully aware of the effect of this agreement upon their seniority status, and otherwise received the guarantees provided in the October 28, 1960, contract.'
 
 
 24
 Upon facts which were largely undisputed the district Judge found that the alleged discriminatory action of the defendants upon which the plaintiffs premised their right of recovery in this case occurred on December 1, 1959, the date of the merger, or at the latest on November 1, 1960, the date plaintiffs entered upon employment with the Norfolk & Western. The judge concluded that any applicable statute of limitations barred the plaintiffs' alleged cause of action under Section 1981, since more than twelve years had passed between the time of the alleged discriminatory acts and the date suit was filed in 1973. He further concluded that insofar as the Title VII action was concerned, the alleged acts took place five years prior to its effective date, July 2, 1965, and that even if some type of retroactivity of Title VII were fashioned, the Act required that the plaintiffs file their charge of discrimination with the EEOC within ninety days as a prerequisite to their law suit. It is undisputed that no charge was filed with the commission until June of 1969, nine years after the alleged acts took place, four years after Title VII became effective and, ironically, eighteen months after the plaintiff Russell had retired from his service with the Norfolk & Western. Upon these facts the court concluded that the plaintiffs' suit was untimely and, in doing so, relied upon what he had every reason to assume was well settled law in this circuit. Revere v. Tidewater Telephone Company, No. 73--1390 (E.D.Va.1973) aff'd 485 F.2d 684 (4 Cir. 1973); Phillips v. Columbia Gas of W. Va., Inc., 347 F.Supp. 533 (S.D.W.Va.1972), aff'd 474 F.2d 1342 (4 Cir. 1973); Mickel v. South Carolina State Employment Service, 377 F.2d 239 (4 Cir. 1967).
 
 
 25
 Although satisfied that the suit was barred by reason of untimeliness, the district judge addressed himself to the merits of the case and found that no discrimination based on race had been factually proved by the plaintiffs. In making this finding he pointed out that the members of every other railway craft affected by the merger, blacks and whites, were placed on the Norfolk & Western seniority rosters on their Virginian date of hire basis, and that the failure to transfer the plaintiffs on a similar basis was due solely to the adamant refusal of blacks in the Norfolk & Western barney yard to accept the Virginian hire date as a basis for seniority. In a Title VII action such as this it is incumbent upon the plaintiffs to show that the alleged discrimination was of a racial nature, and it is manifestly clear that the plaintiffs here were not the victims of any discrimination, racial or otherwise, on the part of the Norfolk & Western. On the contrary, the plaintiffs' loss of seniority resulted solely from the intransigence of their black counterparts in the Norfolk & Western barney yard. It was this attitude on the part of these black employees of the Norfolk & Western, and this alone, that made it impossible for the Norfolk & Western to grant to the plaintiffs the requested seniority status. Indeed, any unilateral action by the Norfolk & Western on this issue would have been a clear violation of the provisions of the Railway Labor Act, 45 U.S.C. § 152 PP Seventh and Tenth. Evidence of a complete absence of racial motivation on the part of the Norfolk & Western is found in the fact that in every area over which it exercised any control, the plaintiffs were treated with eminent fairness. Each of them received vacation benefits based upon their date of hire with the Virginian and Russell's pension benefits were likewise computed with reference to that date. Further evidence of complete racial fairness appears from the willingness of the Norfolk & Western to enter into the special implementing agreement in October of 1960 to accommodate these two employees who by virtue thereof became the only two employees of the Norfolk & Western barney yard with guaranteed wages and employment for five years. Upon these undisputed facts, I find it impossible to see how the majority can discern any 'continuous discrimination' on the part of the Norfolk & Western in this case, and I submit that the finding of liability against the railway is utterly unjustified.
 
 
 26
 Finally, I agree with the district court that the accord, satisfaction and release contained in the agreement of October 28, 1960, should be an effective bar to this lawsuit. The plaintiffs have seen fit to accept all of the benefits under that agreement and, as found by the district court, entered upon their employment with the Norfolk & Western fully aware of the effect of the agreement upon their seniority status. Under these circumstances they should not be permitted to institute this action thirteen years later against the railroad which has scrupulously lived up to its contractual obligations. The majority negotiates this hurdle by quoting from Robinson v. Lorillard Corporation[3] that '(t)he rights assured by Title VII are not rights which can be bargained away--either by a union, by an employer or by both acting in concert.' This statement by the court in that case, however, was made in response to Lorillard's defense that its concededly discriminatory seniority system in operation subsequent to the effective date of Title VII had been adopted under union pressure in the course of its collective bargaining, and I suggest is inapposite to the case at hand. The agreement here in question was not the result of any collective bargaining between the railroad and the union in which Williams and Russell were mere pawns. On the contrary, it was specifically drafted as a solution for their individual problems which had been created by the obstinacy of the employees in the
 
 
 27
 The ultimate irony of the majority opinion is the exculpation of the union from all liability because 'as a plaintiff in Rock under its former designation as Local 974, it fought the same discriminatory system of segregated yards which injured Williams and Russell.'[5] This observation and holding of the majority utterly disregards the record as well as the charges in the plaintiffs' complaint. The plain fact is, and the record clearly discloses, that it was solely Local 974 and its black membership which discriminated against Williams and Russell and denied them their seniority. In its preoccupation with the record in Rock, however, the majority has turned this case upside down and reached a result that cannot be justified either on the record or the law. I would affirm the district court.
 
 
 
 [1]
 It is difficult to reconcile these statements of the majority with the fact that Local 974 (1889), the ally and co-plaintiff of Williams and Russell in Rock, is named and charged as a defendant in the present litigation
 
 
 [2]
 The Rock case is once again pending before this court on a second appeal involving, among other things, the problems posed by the merger of the seniority rosters of the barney yard and the CT yard into a single seniority roster. United Transportation Union, Local 974, etc. et al. v. Norfolk & Western Railway Co., etc. et al., 532 F.2d 336
 
 
 [3]
 444 F.2d at 799
 
 
 [3]
 444 F.2d at 799
 
 
 [4]
 The position of the majority on this point appears to be at variance with that of the Fifth Circuit in United States v. Allegheny-Ludlum Industries, 517 F.2d 826 (decided August 18, 1975), where the court stated:
 'In no respect does footnote 14, or anything else in Gardner-Denver (Alexander v. Gardner-Denver Co., 415 U.S. 36, 94 S.Ct. 1011, 39 L.Ed.2d 147), support the assertion that an aggrieved employee who freely settles his or her unliquidated demand with the employer or the union may reciprocate by suing the same defendant at a later date on the same cause of action, merely because the employee grows dissatisfied with the payment for which he or she settled. Very frankly, we cannot conceive of how any employment discrimination dispute could ever be resolved outside, or indeed inside, the courtroom, if defendants were forbidden to obtain binding, negotiated settlements.
 See also Mungin v. Florida East Coast Railway Company, 318 F.Supp. 720, 735 (D.C.M.D.Fla.1970), aff'd 441 F.2d 728 (5 Cir. 1971).
 
 
 [5]
 Upon reflection it occurs to me that this exculpation of the union may be more apparent than real. The adjustment of the plaintiffs' seniority cannot, of course, be implemented in this case, but can be accomplished only in the Rock litigation and, of necessity, will effect a displacement of a substantial number of the parties plaintiff in that case, many of whom were members of Local 974. This provokes some additional thoughts on the practical ramifications of the majority's disposition of this appeal. Suppose some of the members of the plaintiff class in Rock should be disquieted by reason of the adjustment of the seniority roster and desire to appeal. Assuredly, they could not file an appeal in this case since they are not parties to it. By the same token, if they should pursue an appeal in Rock, would it be appropriate to treat the present case as res judicata on this point? If on the other hand, the two plaintiffs should be dissatisfied with the action of the district judge, should they prosecute another appeal in the present case, or bring Rock to us once again?