June P. ADAMS, Plaintiff,

v.

Benjamin F. BAILAR, Postmaster General, Defendant.

Civ. A. No. 76–0393–R.

United States District Court, E. D. Virginia, Richmond Division.

Dec. 29, 1976.

Denis C. Englisby, Nikas & Englisby, Richmond, Va., for plaintiff.

Eliot Norman, Asst. U. S. Atty., Dept. of Justice, Richmond, Va., for defendant.

MEMORANDUM

MERHIGE, District Judge.

Plaintiff, a Postal Service employee, brings this action under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., to redress the alleged sexually discriminatory employment practices of the defendant. The Postmaster General is named as defendant in this action. The plaintiff seeks monetary, declaratory and injunctive relief. Jurisdiction is attained pursuant to 42 U.S.C.A. § 2000e–16. The matter comes before the Court on the defendant's motion to dismiss. As matters outside the pleadings were submitted and an evidentiary hearing was held, the motion will be treated as one for summary judgment.

The material facts are not in dispute. Pursuant to the Postal Reorganization Act of 1971, each position in the Postal Service was evaluated and rated according to comparable positions in the private sector. Evaluation and matching were conducted pursuant to the Postal Service Job Evaluation Program (JEP). Prior to the JEP, the plaintiff was classified at grade PMS–8. Subsequent thereto, Mrs. Adams was classified at grade PMS–14 and later reduced to grade PMS–11. The gist of the plaintiff's complaint is that males with positions lower than or equal to her own were given significantly higher ratings. The job evaluations became effective March 3, 1973. The plaintiff did not contact the Equal Employment Opportunity (EEO) Counselor for the Postal Service until October 31, 1975. It is the position of the defendant that the plaintiff's claim is time barred.

The plaintiff filed an administrative complaint of job mismatching on August 21, 1973. The Regional Office of Compensation found the plaintiff's job to be properly matched with her new grade. The plaintiff renewed her claim of job mismatch under date of December 13, 1973. The Review Panel at Postal Service headquarters concluded that the job position had been correctly described and assigned in job grade for the Richmond office. This decision was issued April 15, 1974.

At the time Mrs. Adams contacted her EEO Counselor concerning the alleged job mismatch, she also alleged that she had been discriminated against on September 26, 1975 by an action unrelated to the instant suit. A formal complaint was filed November 26, 1975. The Director of the Office of Equal Employment Compliance rejected the complaint on December 11, 1975 as being untimely filed. The Civil Service Commission affirmed this decision under date of July 20, 1976. The instant action was filed August 24, 1976.

■ Section 2000e–16 of 42 U.S.C. provides the exclusive means of remedying discriminatory employment practices in the federal government. Brown v. General Services Administration, 425 U.S. 820, 96 S.Ct. 1961, 48 L.Ed.2d 402 (1976). This section contemplates the invocation of administrative procedures by an aggrieved party as a pre-condition to litigation. The statute is silent as to the time period within which a party must file the initial complaint. Congress did, however, authorize the Civil Service Commission (CSC) to issue such regulations as it deems necessary to effectuate the policies of the statute. 42 U.S.C. § 2000e–16(b). Pursuant thereto, CSC has promulgated a regulation requiring a person to file a complaint within 30 days of the alleged discriminatory conduct. 5 CFR § 713.214. The defendant's motion goes to the plaintiff's admitted non-compliance with this regulation.[1]

■ The alleged discrimination occurred March 3, 1973 when the job evaluation pro-

---

1. 42 U.S.C. § 2000e–16(c) mandates that a person file an action in district court within 30 days of receipt of notice of final action taken by a department or agency. The failure to comply with this provision will result in the dismissal of the action. Brown v. General Services Administration, 425 U.S. 820, 96 S.Ct. 1961, 48 L.Ed.2d 402 (1976). The final agency action herein is dated July 20, 1976 and the complaint was filed August 24, 1976. In the absence of argument on the part of the defendant that the plaintiff's complaint was untimely filed in this court, the Court can only surmise that the plaintiff did not receive notice of the final agency action until sometime subsequent to July 24, 1976.

gram became effective. Should the administrative review of the plaintiff's job classification be deemed a continuation of that conduct, the final action was taken April 15, 1974. *But cf., International Union of Electrical, Radio and Machine Workers, Local 790 v. Robbins & Meyers, Inc.,* 429 U.S. 229, 97 S.Ct. 441, 50 L.Ed.2d 427 (1976). As heretofore noted, the plaintiff did not initiate her discrimination complaint until October 31, 1975—1½ years after the last administrative action. This, to state the obvious, is greatly in excess of the 30-day period set forth in 5 CFR § 713.214.[2] The plaintiff maintains her claim was timely filed under the "continuing discrimination" doctrine. *See, e. g., Williams v. Norfolk and Western Railway Co.,* 530 F.2d 539, 542 (4th Cir. 1975). The discriminatory conduct of which the plaintiff complains consists of but a single act—a job evaluation and reclassification. In such instances, the continuing discrimination doctrine is inapplicable. *Id.*

■ Plaintiff seeks to excuse her delay in initiating Title VII procedures on the basis of being lulled into inaction by the assurances of Postal Service officials to the effect that her problem would be taken care of.[3] The plaintiff's own testimony at the hearing held before this Court rebuts such a contention. Mrs. Adams candidly admitted that she was aware that certain time limita-

tions[4] were applicable to Title VII claims. She testified, in essence, that she was hesitant to pursue her claims through formal litigation because she viewed herself as a "company person" and thought that any such action would be futile. This latter fear stemmed from the alleged relationship between the EEO Counselor and the plaintiff's supervisor to whom she attributed much of her difficulties. These considerations do not smack of the type of inducements which would justify the avoidance of a limitation period. *See, e. g., Akron Presform Mold Co. v. McNeil Corporation,* 496 F.2d 230 (6th Cir. 1974).

■ As the Court views the evidence, the plaintiff consciously chose not to pursue her claim under Title VII because she preferred to utilize what she viewed as a more informal, and hopefully more fruitful, means. It is settled, however, that attempted "in-house" resolution of legal disputes does not toll the applicable limitations period for Title VII actions. *Woods v. Safeway Stores, Inc.,* 420 F.Supp. 35, 40 (E.D.Va.1976). Cf. *International Union of Electrical, Radio and Machine Workers, Local 790 v. Robbins & Myers,* 429 U.S. 229, 97 S.Ct. 441, 50 L.Ed.2d 427 (1976). *Johnson v. Railway Express Agency,* 421 U.S. 454, 465–66, 95 S.Ct. 1716, 44 L.Ed.2d 295 (1975). While equitable considerations may, in the appropriate circumstances, excuse the plaintiff's untimely filing[5] no such showing has been

2. Plaintiff does not attack the validity of the regulation creating the 30-day limitation period. In light of the facts that (1) a principal goal of the 1972 amendments to Title VII of the 1964 Civil Rights Act was to accord "[a]ggrieved [federal] employees or applicants . . . the full rights available in the courts as are granted to individuals in the private sector." *Chandler v. Roudebush,* 425 U.S. 840, 96 S.Ct. 1949, 48 L.Ed.2d 416, (1976) and (2) private sector employees may file complaints within 180 days after the alleged unlawful employment practice occurred, 42 U.S.C. § 2000e–5(e), the regulation may properly be questioned. The case before the Court, however, is an inappropriate vehicle for such an attack. The plaintiff's delay of 1½ years in instituting her Title VII action would be untimely even under the more generous period afforded private sector employees.

3. Mrs. Adams' strongest evidence concerning inducement involves a conversation with the Postmaster General Klassen in June of 1974. Accepting Mrs. Adams' testimony reference Mr. Klassen's assurances that he would look into the matter, is nonetheless clear that any reliance on such statements was untenable in light of Mr. Klassen's resignation from office in February of 1975. Indeed, the Civil Service Commission advised Mrs. Adams on April 24, 1975 to get in contact with her EEO Counselor. This advice was not heeded until more than six months had passed.

4. Mrs. Adams was under the impression that complaints needed to be filed within 90—as opposed to 30—days of the alleged unlawful conduct. This difference is insignificant in light of the 1½ year delay involved herein.

5. *See, e. g., Laffey v. Northwest Airlines, Inc.,* No. 74–1791, Sl.Op. pp. 88–89 (D.C.Cir. Oct. 20,

made in the instant case. Accordingly, the defendant's motion to dismiss the action as untimely filed must be sustained.

An appropriate order will issue.

1976); *East v. Romine, Inc.*, 518 F.2d 332, 336 n. 3 (5th Cir. 1975); *Reeb v. Economic Opportunity Atlanta, Inc.*, 516 F.2d 924 (5th Cir. 1975); *Anisgard v. Exxon Corp.*, 409 F.Supp. 212 (E.D.

La.1975); *EEOC v. Nicholson File Co.*, 408 F. Supp. 229 (D.Conn.1976). *Cf. Briggs v. Brown & Williamson Tobacco Co.*, 414 F.Supp. 371, 378 (E.D.Va.1976).