**Michael LEWIS, Plaintiff,**

v.

**Archna GUPTA et al., Defendants.**

**Civ. A. No. 1:98CV1269.**

United States District Court,
E.D. Virginia,
Alexandria Division.

June 3, 1999.

---

William M. Stanley, Davis & Stanley, LLC, Fairfax, VA, for plaintiff.

Nina J. Ginsberg, DiMuro, Ginsberg & Lieberman, PC, Alexandria, VA, for defendants.

## MEMORANDUM OPINION

ELLIS, District Judge.

This diversity action arises out of defendant Archna Gupta's false allegations to law enforcement authorities that plaintiff Michael Lewis raped and sodomized her at knife point. By amended complaint Lewis sues Archna Gupta for defamation, conspiracy, malicious prosecution, and intentional infliction of emotional distress, and sues her parents, defendants Shanti and Manju Gupta, for intentional infliction of emotional distress and conspiracy. This matter comes before the Court on defendants' motion to dismiss multiple counts.

### I.[1]

The facts giving rise to this action paint a dark and disturbing picture. The story begins in the fall of 1994, when Michael Lewis and Archna Gupta met and began dating. Their relationship ended in 1995, and Lewis left Northern Virginia, eventually returning to his hometown in Maine. Thereafter, he neither saw Archna nor returned to Virginia.

Months later, on October 16, 1996, Archna Gupta reported to the Arlington County

1. On a motion to dismiss, the material facts alleged in the complaint are taken as true, solely for the disposition of the motion. *Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984).

Police Department that she had been assaulted the previous night by an ex-boyfriend named Mike Daniels. Specifically, she claimed that when she got in her car that evening, the attacker, who had hidden himself in her back seat, held a knife to her throat and forced her to let him take the wheel of her car, after which he drove to an isolated location, forced her into the back seat of her vehicle, and raped and sodomized her at knife point. Then, she reported, the attacker drove her back to the parking lot from which she had been abducted and fled the scene. Archna said that she had known who he was as soon as he had spoken to her. Archna then gave subsequent statements to the authorities concerning the rape and submitted to a medical examination of her person and clothing for the purpose of collecting evidence of the rape.

Based on this story, the police began to search for Mike Daniels, the alleged rapist, but found no such person. Accordingly, they sought further information from Archna Gupta and her family about her attacker's identity. As a result of these inquiries, someone in her family provided police with a photograph of the alleged perpetrator, which photograph showed an army uniform hanging in the background marked with the name "Lewis."[2] The police detective who received the photograph noted the army uniform and, based on this, asked Archna whether her attacker's last name might in fact be "Lewis." She replied that it "could be." Shortly thereafter, Lewis was located in Maine and warrants for his arrest on the charges of abduction and forcible sodomy were secured. Lewis turned himself in to Maine authorities on October 24, 1996, after learning that a "fugitive from justice" warrant had been issued against him. He then languished in a Maine prison, awaiting extradition to Virginia, for approximately 455 days.

In December 1996 and January 1997, Archna and her parents, Shanti and Manju Gupta, met with the Assistant Commonwealth Attorney, and in these meetings, Archna alleged that Lewis had abducted, raped, and sodomized her. She also stated that Lewis had called her shortly after the alleged attack, apologizing and promising he would never make contact with her again. Manju Gupta, Archna's mother, told the Assistant Commonwealth Attorney that they were still receiving "strange telephone calls" at their home they believed originated with Lewis.

On January 13, 1998, when Lewis had been incarcerated for almost fifteen months, the Order of Extradition was signed and he was transported to Arlington County. Upon arraignment in Virginia, he was unable to make bond, and so remained in jail pending trial. The legal proceedings against Lewis continued to wend their way forward, and on February 25, 1998, a preliminary hearing was held in Arlington County General District Court, in which Archna Gupta testified as to the alleged occurrences and identified Lewis as her attacker, although her version of events in this hearing was apparently at odds with her previous statements.

Meanwhile, in light of Archna Gupta's inconsistent stories, prosecutors began to harbor growing doubts as to the merits of the case. These doubts were heightened when, with authorization from Lewis, defense counsel shared evidence with prosecutors showing that Lewis was in Massachusetts at the time of the alleged rape. Then, on April 2, 1998, prosecutors received a lab report detailing the results of the rape test administered to Archna after the alleged attack. The serology test revealed semen present in her vaginal area and on her underwear and excluded Lewis as the source of the semen. Archna had previously denied having sexual relations

**2.** Presumably the photograph was a picture of Lewis, although this is not specifically alleged in the complaint.

with anyone else in the twenty-four hours prior to and immediately after the rape.

Based on these test results, prosecutors immediately moved that Lewis be released on his personal recognizance. The motion was granted and Lewis was released, having by then spent 529 days in jail as a result of Archna Gupta's allegations. All charges against Lewis were dropped on May 7, 1998, and prosecutors initiated an investigation of Archna Gupta for perjury, filing a false police report, and obstruction of justice, obtaining Lewis's cooperation in this effort. As part of the investigation, police monitored a phone call between Lewis and Manju Gupta, during which conversation Manju Gupta allegedly indicated that she knew her daughter's claims against Lewis were false and that she supported her daughter in these claims regardless of their falsity.

On July 20, 1998, Archna Gupta was indicted for perjury, obstruction of justice, and filing a false police report. She eventually entered a plea of "no contest" to felony perjury and was sentenced to 5 years in the state penitentiary, with all but time served (approximately one month) suspended.[3]

Lewis sued Archna, Shanti, and Manju Gupta on multiple counts, including defamation, malicious prosecution, abuse of process, false imprisonment, perjury, conspiracy, and intentional infliction of emotional distress. The Guptas moved to dismiss multiple counts of the complaint, which motion was granted in part and

denied in part.[4] Lewis thereafter filed an amended complaint, and now sues Archna Gupta for multiple counts of defamation, conspiracy, malicious prosecution, and intentional infliction of emotional distress and sues Shanti and Manju Gupta for intentional infliction of emotional distress and conspiracy. Archna Gupta moves to dismiss two of the defamation counts and the conspiracy count alleged in the amended complaint and Shanti and Manju Gupta move to dismiss the intentional infliction of emotional distress and conspiracy counts alleged in the amended complaint, pursuant to Fed.R.Civ.P., 12(b)(6).

**II.**

Count One of Lewis's complaint alleges that Archna Gupta defamed Lewis by falsely accusing him of abduction, rape, and sodomy in her conversations with Detective Chase of the Arlington County Police Department on October 16, 1996, and repeatedly thereafter.[5] Because this action was filed on August 31, 1998, more than a year after the October 16, 1996, meeting, Archna Gupta seeks dismissal of this count as time-barred by Virginia's one-year statute of limitations for defamation actions.[6]

Lewis deploys several theories in his attempt to save the October 16, 1996, defamation claim. He first argues that Archna Gupta's defamation is a continuing tort, which did not cease until the conclusion of criminal proceedings against him.

---

3. Archna Gupta served this month in prison after she recanted her earlier confession to perjury and claimed during a suppression hearing in that case that her confession had been coerced and that she had in fact been raped and abducted by Lewis. In the circumstances, the presiding judge concluded that she was once again committing perjury and remanded her to custody following the hearing.

4. Specifically, a count of defamation brought against Archna Gupta based on privileged statements was dismissed with prejudice, as was a false imprisonment count and a perjury count, for failure to state a claim upon which

relief could be granted. See Rule 12(b)(6), Fed.R.Civ.P. In addition, an abuse of process count brought against Manju and Shanti Gupta was dismissed with prejudice pursuant to Rule 12(b)(6). A second defamation count was dismissed with leave to amend, as was a count alleging conspiracy and a count alleging intentional infliction of emotional distress.

5. Despite the allegation of repeated acts of defamation, Lewis's counsel conceded in oral argument that Count One is limited to the October 16, 1996, incident.

6. See Va.Code § 8.01–247.1.

It is true that under a continuing tort theory, the statute of limitations does not begin to run until the tortious conduct ceases. *See, e.g., Williams v. Norfolk and Western Railway Co.,* 530 F.2d 539, 542 (4th Cir.1975) (finding that 180–day Title VII limitations period did not bar challenge of racially discriminatory employment practices occurring more than 180 days before suit when plaintiffs alleged continuous discrimination rather than any single discriminatory act). Yet, this theory does not fit these facts; repeated defamations do not constitute a continuing tort; rather, as courts have uniformly recognized, each separate defamatory statement itself constitutes a separate and distinct cause of action. *See, e.g., Celli v. Shoell,* 995 F.Supp. 1337, 1345 (D.Utah 1998) (holding that repeated defamatory statements do not toll the running of the statute of limitations and each new statement constitutes a distinct cause of action); *Flotech v. E.I. DuPont de Nemours Co.,* 627 F.Supp. 358, 363 (D.Mass.1985), *aff'd,* 814 F.2d 775 (1st Cir.1987) (finding case law governing the application of the statute of limitations to defamation actions suggested that continuing tort theory was not available in such cases). Simply put, continuing tort theory is not available to save Lewis's defamation claim from the time bar.

 Mr. Lewis next contends that Virginia's one-year statute of limitations is properly tolled during his period of imprisonment. The Fourth Circuit, in *Almond v. Kent,* 459 F.2d 200, 203 (4th Cir.1972), and in a long series of unpublished opinions following *Almond,* has repeatedly held that Virginia's tolling statute does not toll statutes of limitations during a potential plaintiff's period of incarceration.[7] Lewis attempts to avoid this precedent by arguing that under Rule 17(b), Fed.R.Civ.P., Maine's tolling provision, which allows tolling of limitations periods for actions that accrue while a potential plaintiff is imprisoned,[8] rather than Virginia's, should apply. This argument is flawed in at least two respects. First, Rule 17(b), Fed.R.Civ.P., is concerned with capacity to sue, not with the tolling of limitations periods. It specifies that "[t]he capacity of an individual ... to sue or be sued shall be determined by the law of the individual's domicile." Maine's law nowhere indicates that prisoners have no capacity to sue; instead, Maine simply accommodates the difficulties of bringing suit from prison by allowing tolling for actions that accrue during imprisonment. Indeed, there is no issue in this case concerning Lewis's capacity to sue; he has always had the *capacity* to bring this action. Thus, Rule 17(b) is wholly inapposite here. What is at issue is whether Lewis is entitled to the benefit of the Maine tolling provision. Plainly, he is not; the applicable statute of limitations and its associated tolling provisions are procedural matters governed by the law of the forum state, namely Virginia. *See Klaxon Co. v. Stentor Elec. Mfg. Co.,* 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941); *Barry v. Donnelly,* 781 F.2d 1040, 1042 (4th Cir.1986). Second, even if the Maine statute were applicable here, it tolls the statute of limitations only for those causes of action that *accrue* while the potential plaintiff is imprisoned. The cause of action in Count One accrued on October 16, 1996, when the defamatory statement was published,[9] over one week before Lewis was first imprisoned. *See McCutchen v.*

---

7. Virginia's general tolling provision in effect at the time of *Almond* allowed tolling only for infancy and insanity. *See* Va.Code § 8.01–229 (1993). Effective January 1, 1998, § 8.01–229 was amended to allow tolling during the period when a potential plaintiff is "incapacitated." No Fourth Circuit or Supreme Court of Virginia decision has yet addressed whether this amendment extends tolling to periods of imprisonment. In any event, for reasons noted *infra,* the 1998 amendment has no retroactive effect and is therefore not applicable here.

8. *See* 14 M.R.S.A. § 853.

9. *See Times–Dispatch Pub. Co. v. Zoll,* 148 Va. 850, 139 S.E. 505 (1927).

*Currier,* 94 Me. 362, 47 A. 923 (1900) ("When the statute of limitations has once begun to run, it is not interrupted by a subsequent disability."). In sum, Rule 17(b) does not operate here to require the application of the Maine tolling provision, and even were this not so, Lewis could derive no benefit from this provision.

Finally, Lewis suggests that the statute of limitations should be tolled because the recent amendments to Virginia's tolling statute, which arguably permit tolling the statute of limitations during a plaintiff's incarceration,[10] have retroactive effect. These amendments became effective January 1, 1998, one year and seventy-six days after Lewis's cause of action in Count One accrued. Statutory amendments affecting statutes of limitation generally affect substantive, rather than procedural, rights, and such substantive rights are typically protected from retroactive application of laws. *See, e.g., Link v. Receivers of Seaboard Air Line R Co.,* 73 F.2d 149, 151–52 (4th Cir.1934) (holding that a statute's limitations period is not merely a procedural regulation, but a "condition annexed to the enjoyment of a right" and a change in that limitations period was thus a change in substantive rights not to be given retroactive effect in the absence

of clear legislative intent). In other words, on October 17, 1997, when the statute of limitations on the October 16, 1996, statement alleged in Count One had expired, under Virginia law, Archna Gupta gained a vested right to set up the statute of limitations as a bar to the cause of action. *See Starnes v. Cayouette,* 244 Va. 202, 419 S.E.2d 669, 674 (1992) (holding that when a statute of limitations has run, defendant gains a property interest in his or her right to rely on the defense). Lewis argues that nevertheless, since the editor's note to the revised tolling statute noted that a particular portion of the provision would run prospectively, by implication the rest of the amendments, including those at issue here, were intended to run retrospectively. Putting aside the serious question whether due process permits such a legislative erasure of vested substantive rights, Lewis's proffered evidence of legislative intent is far too weak to support a conclusion that Virginia's tolling statute, as amended, was meant to be retroactive in effect.

For these reasons, Count One is barred by the one-year statute of limitations for defamation actions and accordingly must be dismissed.[11]

---

10. *See supra* note ——.

11. Count One essentially repleads a defamation count previously dismissed without prejudice on defendant Archna Gupta's motion. In ruling on the previous motion to dismiss, the Court considered Lewis's argument that this defamation claim accrued not on the date of publication (October 16, 1996), but rather on the date when the criminal charges against him arising out of that defamation were dismissed (May 7, 1998). Relying on *Warren v. Bank of Marion,* 618 F.Supp. 317 (W.D.Va. 1985), Lewis argued that the instant defamation action is analogous to a malicious prosecution action, which does not accrue until the favorable resolution of criminal charges against the potential plaintiff. Lewis's analogy fails. In contrast to a malicious prosecution action, no legal barrier prevented Lewis from bringing his defamation suit prior to the time the charges against him were dismissed, since a favorable resolution of any relevant criminal charges is not an element of a defa-

mation cause of action. Although it may be difficult to prosecute a civil defamation suit while simultaneously defending against criminal proceedings based on that defamation, and while such a civil suit could be construed as an attempt to intimidate a crucial witness in a criminal case, *cf. United States v. Tison,* 780 F.2d 1569 (11th Cir.1986) (enjoining criminal defendants from bringing slander action against government witness, holding that such suit constituted harassment), the civil proceedings may be stayed where appropriate or necessary to avoid these difficulties. Accordingly, Lewis's cause of action accrued when the defamatory statements were published, namely October 16, 1996, more than one year before the instant suit was filed. *See Jordan v. Shands,* 255 Va. 492, 500 S.E.2d 215, 218 (1998) (holding when plaintiff brought a defamation action against police officer for statements made in connection with her wrongful arrest, cause of action accrued on the date of the alleged defamation

## III.

 Archna Gupta moves to dismiss either Count 2 or Count 3, arguing that the same conduct has been pled in both counts. Count 2 alleges that Archna Gupta defamed Lewis on December 1, 1997, when, in conversation with "an Assistant Commonwealth's attorney and other law enforcement officials for the County of Arlington," she falsely accused Lewis of raping, abducting, and sodomizing her. Count 3 alleges that on the same date she defamed him when she stated to an Arlington police detective and to two Assistant Commonwealth's Attorneys that he had abducted, raped, and sodomized her. Lewis responds that while the two defamatory statements were made on the same day, they were separate statements and constitute separate causes of action. This is correct, for "no matter on how many separate occasions one may utter slanderous words about another (though all may refer to the same transaction) each slander constitutes a new cause of action." *Weaver v. Beneficial Fin. Co.*, 199 Va. 196, 98 S.E.2d 687, 691 (1957). Both Counts 2 and 3 survive this attack.

## IV.

Archna, Shanti, and Manju Gupta move to dismiss Count Nine of the amended complaint, which alleges that between October 16, 1996, and February 3, 1999, all the defendants conspired to conceal their knowledge of the falsity of Archna Gupta's accusations and her intent to commit perjury, for the purpose of protecting themselves from civil liability, personal embarrassment, and adverse publicity. Count Nine also alleges that Shanti and Manju Gupta actively suborned and encouraged Archna's perjury.

 "[M]ere conclusory language" is insufficient to state a cause of action for civil conspiracy under Virginia law. *See Bowman v. State Bank of Keysville*, 229 Va. 534, 331 S.E.2d 797, 802 (1985) ("The conspiracy [claim] is asserted in mere conclusory language and the argument in support of the theory is based on inferences that are not fairly and justly drawn from the facts alleged."). Thus, the facts alleged in support of this claim must be examined with some care. In support of the conspiracy charge, Lewis alleges as follows:

(i) during December 1996 and January 1997, Manju, Shanti, and Archna Gupta met with the Assistant Commonwealth's Attorney, at which time Archna Gupta alleged that Lewis had raped her and had telephoned her after the attack and Manju Gupta reported that they were still receiving "strange phone calls" at their home, likely from Lewis;

(ii) Manju Gupta attended the February 25, 1998, preliminary hearing with Archna Gupta;

(iii) during a 1998 monitored phone call between Lewis and Manju Gupta, Manju Gupta indicated that she knew her daughter's claims were false and that she nevertheless supported her in these claims;

(iv) Manju and Shanti Gupta were present at the February 3, 1999, suppression hearing in the perjury case against their daughter, during which Archna Gupta recanted her earlier confession of perjury and again accused Lewis of abducting and raping her; and

(v) based on information and belief, Shanti and Manju Gupta knew that Archna Gupta had previously made a false accusation of rape against another individual and Shanti and Manju Gupta had assisted in concealing the falsity of this accusation from law enforcement authorities.

Lewis also alleges in general terms that the three defendants (i) agreed to conceal Archna's criminal conduct, (ii) agreed to obstruct justice, (iii) conspired to continue the malicious prosecution of Lewis, and (iv) provided false information to the authorities against her were dismissed).

rather than the date on which the charges against her were dismissed).

ties. Finally, Lewis alleges that Manju and Shanti encouraged Archna to continue making false allegations.

 The Guptas urge that these allegations are not sufficiently detailed to state a conspiracy claim under Virginia law. *See Bowman,* 331 S.E.2d at 802. Indeed, Lewis's allegations regarding Shanti Gupta's participation in the conspiracy are very thin. Crucially, there is no allegation that Shanti ever admitted that he knew that his daughter's accusations were false. In addition, Shanti Gupta's behavior, as alleged in the complaint, amounts to little more than silent presence at various meetings and hearings in which Archna Gupta accused Lewis of rape. Without some evidence indicating that Shanti Gupta knew his daughter was lying, his mere presence at meetings and hearings does not support the inference that he conspired with Manju Gupta and Archna Gupta to defame and maliciously prosecute Mr. Lewis. Given certain assumptions about family intimacy, it may seem likely that if such a conspiracy existed between his wife and daughter, Shanti must have been aware of it. Yet, speculation about how families typically relate is an insufficient basis on which to rest a conspiracy charge. Nor do Lewis's conclusory allegations that Shanti Gupta conspired with Manju and Archna Gupta suffice to state a claim for conspiracy. Thus, Count Nine must be dismissed as to Shanti Gupta.

 The complaint's allegations as regards Manju Gupta are significantly different. Lewis has pled specific facts in support of his conspiracy claim against Manju, namely her presence at various hearings, her reports of "strange phone calls" to the Gupta home and suggestion that Lewis was making those calls, and her monitored telephone conversation with Lewis. These allegations are adequate to support a claim that Manju Gupta conspired with Archna Gupta to defame Lewis and prosecute him maliciously. According to the complaint, Manju Gupta knew that her daughter's accusations were false, yet nevertheless admitted to supporting her in them. Manju Gupta also participated in the prosecution by reporting that she and her family had been receiving strange phone calls and stating that she believed they came from Lewis. Given her later alleged admission, this information can reasonably be said to be false or misleading. In addition, she attended various hearings at which her daughter gave perjured testimony, which behavior is at least suggestive of support of her daughter's continuing false accusations.[12] While these facts are somewhat sparse, when all reasonable inferences are drawn in favor of Lewis, they support the conclusion that Manju Gupta knew that her daughter's accusations were false, yet took active steps to assist the prosecution based on these accusations and to encourage her daughter to continue in these accusations. These allegations are adequate to support an inference of an express or tacit agreement between Archna and Manju Gupta to continue the defamation and malicious prosecution of Lewis.

---

12. It should be noted that Lewis may not assert a claim alleging merely that the Guptas conspired to commit perjury or suborn perjury. The general rule is that just as no civil action for perjury exists, a civil action for conspiracy to commit perjury or to pursue lawful ends by means of perjury cannot be maintained, since "[a] person may not be prosecuted for conspiring to commit an act he may perform with impunity." *House v. Belford,* 956 F.2d 711, 720 (7th Cir.1992). *See, e.g., Jones v. Cannon,* 174 F.3d 1271 (11th Cir.1999); *Harris v. FMC Corp.,* 73 F.3d 362, 1995 WL 758346, at *3–*4 (6th Cir. Dec. 19, 1995); *Stolte v. Blackstone,* 328 N.W.2d 462, 466 (Neb.1982); *Anderton v. Herrington,* 113 Idaho 73, 741 P.2d 360, 362–363 (1987); L.B. Frantz, Annotation, *Actionability of Conspiracy to Give or to Procure False Testimony or Other Evidence,* 31 A.L.R.3d 1423 (1971). Yet, courts have recognized an exception to this rule where the alleged perjury is only one part of a larger conspiracy. *See, e.g., Harris,* 73 F.3d 362, 1995 WL 758346, at *3–*4 (discussing cases). As it is not necessary to the disposition of Count Nine, the applicability of this exception is not considered here.

Manju Gupta further contends that Count Nine should be dismissed as it simply alleges that she conspired not to disclose her knowledge of Archna's false accusations and thus fails to plead that she pursued either an unlawful purpose or a lawful purpose accomplished by unlawful means, as required to establish a conspiracy claim under Virginia law, *see, e.g., Hechler Chevrolet, Inc. v. General Motors Corp.*, 230 Va. 396, 402, 337 S.E.2d 744, 748 (1985). This contention is flawed in several respects. First, Manju Gupta's characterization of her alleged participation is simply inaccurate. As noted, the complaint alleges that she not only failed to reveal that Archna's charges were false, but also actively participated in purveying the false information, *inter alia,* by telling the authorities that she believed Lewis was responsible for strange phone calls to their home. Second, Manju Gupta's reliance on *Jones v. Commonwealth,* 208 Va. 370, 157 S.E.2d 907 (1967), for the proposition that a failure to disclose knowledge of false accusations cannot support a conspiracy charge is misplaced. In *Jones,* the Supreme Court of Virginia held that a party's mere presence when a crime is committed does not render that party an aider and abettor. Clearly, that case is not controlling here, as it in no way addresses the requirements of a civil conspiracy action. Finally, even if the complaint alleged only that Manju conspired not to disclose that Archna's accusations were false, the contention that such a complaint alleges no unlawful purpose or unlawful means is incorrect, as demonstrated by *Clarke v. Montgomery Ward & Co.,* 298 F.2d 346 (4th Cir.1962). *Clarke* holds that under Virginia law, a defendant may be found liable for malicious prosecution when he or she initially places before a prosecuting officer information upon which criminal proceedings are begun and then fails to disclose later-discovered information casting doubt on the accused's guilt. In such instances, "[i]t should be no defense that the accuser acted in good faith in initiating the prosecution, if he remains silent and allows it to go on when he later learns that he was in error." *Id.* at 348. Suppression of truthful information through silence can thus sustain a malicious prosecution charge. *See Johnson v. Kaugars,* No. LM–152–3, 1988 WL 619378 (Va. Cir. Ct. Oct. 31, 1988) (citing *Clarke* ). While *Clarke* is not a conspiracy case, it clearly implies that if Manju Gupta learned that Archna Gupta's accusations were false yet continued to encourage her to make these allegations and agreed to conceal their falsity through silence and suppression, she materially participated in Ms. Gupta's malicious prosecution of Mr. Lewis, and thus sought to protect herself and Archna Gupta from civil liability, personal embarrassment, and adverse publicity through unlawful means. Count Nine's allegations are thus sufficient, at this threshold stage, to make out a civil conspiracy claim against Archna and Manju Gupta. Thus, Count Nine survives as to these defendants.

## V.

Count Eleven alleges that all three defendants intentionally inflicted emotional distress upon Lewis. Only Shanti and Manju Gupta seek to dismiss this claim, arguing that Lewis has failed to plead the cause of action with the requisite specificity. In Virginia, the elements of a cause of action for intentional infliction of emotional distress are (1) conduct that is intentional or reckless; (2) conduct that is outrageous and intolerable; (3) conduct that is causally connected to plaintiff's emotional distress; and (4) severe emotional distress. *See Russo v. White,* 241 Va. 23, 26, 400 S.E.2d 160, 162 (1991). Outrageous and intolerable conduct is defined as conduct that is "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Id.* Because the concept of "outrageousness" "fails to provide clear guidance either to those whose conduct it purports to

regulate, or to those who must evaluate that conduct," the tort is not favored in Virginia. *Id.*

■ For the same reasons that the complaint fails to state a claim of conspiracy against Shanti Gupta, it fails to make out a claim for intentional infliction of emotional distress. Simply put, the complaint does not allege any outrageous or intolerable action by Shanti Gupta, other than conclusory accusations of participation in a conspiracy. If such accusations cannot support a claim for conspiracy, they cannot support a claim for intentional infliction of emotional distress through participation in the conspiracy. *See id.* at 163 (noting that in an intentional infliction of emotional distress claim, a plaintiff cannot rely on conclusory allegations, but must allege all the facts necessary to establish the cause of action). Thus, the claim of intentional infliction of emotional distress against Shanti Gupta must necessarily be dismissed. *See, e.g., Jordan v. Shands,* 255 Va. 492, 500 S.E.2d 215, 219 (1998) (dismissing intentional infliction of emotional distress claim when "the plaintiff's allegations [were] merely conclusional").

■ Again, though, the allegations in regard to Manju Gupta are more substantive. As noted, the complaint describes a monitored phone call between Lewis and Manju Gupta, in which Manju Gupta allegedly indicated that she supported and encouraged her daughter's accusations despite knowing they were false. The complaint also indicates that Manju Gupta accused Lewis of making strange calls to their home in the months following the rape. Just as these facts allow the inference of conspiracy to be drawn, they here allow the inference of intentional infliction of emotional distress. If Manju Gupta conspired to prosecute Lewis falsely for a felony and defame him as a rapist, her actions were both intentional and outrageous, as false accusations of felonious behavior, resulting in the prosecution and imprisonment of an innocent individual, plainly constitute conduct that is "atrocious, and utterly intolerable in a civilized community." *Russo,* 400 S.E.2d at 162. Also, it seems clear that such a conspiracy may be causally related, as alleged, to severe emotional distress suffered by Lewis. Indeed, the complaint alleges that as a direct result of Manju Gupta's behavior as a participant in a conspiracy to defame and prosecute him maliciously, Lewis has suffered severe mental and emotional distress flowing from his one and a half year (529 days) imprisonment and from the general circulation of the allegation that he is a sexual predator. Such emotional distress can reasonably be characterized as "so severe that no reasonable person could be expected to endure it." *Id.* Thus Count Eleven survives in regard to Manju and Archna Gupta.

## VI.

In summary, Count One of the amended complaint must be dismissed in its entirety, while Counts Nine and Eleven are dismissed against Shanti Gupta only. The remainder of the complaint may proceed. An appropriate order has entered.

The Clerk is directed to forward copies of this Memorandum Opinion to all counsel of record.