**BAY TOBACCO, LLC, Plaintiff,**

v.

**BELL QUALITY TOBACCO PRODUCTS, LLC, et. al., Defendants.**

**No. CIV.3:03 CV 130.**

United States District Court,
E.D. Virginia,
Richmond Division.

April 24, 2003.

---

Steven Scott Biss, Richmond, VA, for Plaintiff.

Charles Michael Sims, LeClair Ryan, Richmond, VA, for Defendant.

### MEMORANDUM OPINION

HUDSON, District Judge.

This case is before the Court on Plaintiff's Motion to Remand and on Defendants' Federal Rules of Civil Procedure (hereinafter "Rule(s)") 12(b)(2) and 12(b)(6) motions to dismiss.

In or about January of 2003, Plaintiffs Bay Tobacco Company, LLC ("Bay" or "Bay Tobacco") and Kingston Tobacco, Inc. ("Kingston") filed, in the Circuit Court for the City of Richmond, the Motion for Judgment that is the subject of the instant action. On February 5, 2003, Defendants Bell Quality Tobacco Products, LLC ("Bell" or "Bell Quality") and Continental Distribution, LLC ("Continental") filed a Joint Notice of Removal in this Court alleging, as their basis for removal, that this suit involves diverse parties where the amount in controversy exceeds $75,000 and that Plaintiff Kingston was fraudulently joined in order to defeat diversity jurisdiction.

On February 10, 2003, Defendants filed several dispositive motions including Rule 12(b) motions to dismiss for lack of *in personam* jurisdiction and for failure to state a claim upon which relief may be granted. In support of their motions challenging this Court's exercise of personal jurisdiction, Defendants attached two affidavits: Bell Quality tendered the affidavit of James C. Heflin (hereinafter "Heflin Aff."), and Continental tendered the affidavit of Carl B. White (hereinafter "White Aff."). Thereafter, this Court ordered Plaintiff Bay Tobacco to file any affidavits it might have in support of personal jurisdiction in this case. In the same March 6, 2003 order, the Court advised counsel that,

"If Plaintiff files no affidavits ... [as to personal jurisdiction,] Defendants' affidavits will be deemed unrebutted and controlling." Bay chose not to file any such affidavits.[1]

On March 6, 2003, the Court *sua sponte* found that any cause of action Plaintiff Kingston might have against the defendants is completely separate and distinct from those currently alleged by Plaintiff Bay Tobacco. Consequently and pursuant to Rule 21, the Court dismissed Kingston as a misjoined party.[2] This created complete diversity between the parties and gave this Court subject matter jurisdiction over this action in its entirety. Moreover, dismissal of Kingston necessarily made Plaintiff's (formerly Plaintiffs') Motion to Remand moot. As a result, that motion will be denied.

On April 11, 2003, the remaining parties appeared before this Court to present oral argument in support of and in opposition to the pending motions to dismiss. Taking the defendants' motions to dismiss for lack of personal jurisdiction first, the Court invited each party to present additional evidence in support of its position. The parties declined, and the Court proceeded to hear oral argument. Thereafter, the Court took Defendant Bell Quality's Rule 12(b)(2) motion to dismiss under advisement, denied Continental's Rule 12(b)(2)

motion to dismiss, and heard argument with respect to the Rule 12(b)(6) motions to dismiss. Not having decided the jurisdictional issue with respect to Bell Quality, the Court again took Bell's motion under advisement. As to Continental, the Court granted the motion to dismiss Counts I and II of the Motion for Judgment for failure to state a claim upon which relief may be granted and denied the motion with respect to the defamation claim alleged in Count VI.[3]

After performing an exhaustive review of the pleadings, memoranda, and affidavits in support thereof and considering the arguments and case law offered by counsel, the Court will grant Defendant Bell Quality's motion to dismiss for lack of personal jurisdiction. The relevant factual background and the Court's reasoning and rationale underlying this and the aforementioned rulings are detailed below.

## I. *Subject Matter Jurisdiction and Plaintiffs' Motion to Remand*

On March 7, 2003, Bay Tobacco and Kingston filed a joint motion to remand to state court for alleged lack of diversity between the parties. Whether to remand a case to state court following removal is governed by 28 U.S.C. § 1447(c) and (d). Subsection (c) provides, in pertinent part, that "[i]f at any time

---

1. During oral argument, Bay Tobacco's counsel explained Bay's lack of supporting affidavits, saying, "Your Honor issued an order saying that we had to oppose [Bell's jurisdictional argument] with affidavits. We haven't because we can't ...." Transcript of Motions Hearing April 11, 2003 (hereinafter "Tr.") at 13, ll. 22–24. Bay did, however, file an affidavit in support of its motion to remand, part of which applies to this Court's personal jurisdiction analysis. *See* Sandra W. Brent Affidavit ("Brent Affidavit or Brent Aff.").

2. During the April 11 oral argument Bay counsel represented that he had not received

the Court's March 6, 2003 order dismissing Plaintiff Kingston, but acknowledged the contents of a second order, entered and mailed contemporaneously, advising Plaintiff to submit evidence in support of personal jurisdiction.

3. In its ruling from the bench, the Court mislabeled the defamation claim as Count III. For the record, Count III does not apply to Continental. The Court intended to deny Continental's Rule 12(b)(6) motion as it relates to Count VI, the defamation claim, and not as to Count III.

before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded." Moreover, "[i]f federal jurisdiction is doubtful, a remand is necessary." *Mulcahey v. Columbia Organic Chems. Co.*, 29 F.3d 148, 151 (4th Cir.1994) (citations omitted).

■ As this case was originally filed, with the inclusion of Kingston as a plaintiff, federal subject matter jurisdiction was doubtful. However, because this Court found that, as pled in the Motion for Judgment, Kingston's alleged contract and dealings with Defendants did not arise out of the same transaction or occurrence as those between Plaintiff Bay Tobacco and Defendants, the Court found that Kingston was improvidently joined and dismissed Kingston as a misjoined party under Rule 21. *See also* Fed.R.Civ.P. 20(a). As a direct result, complete diversity exists between the parties. Because the amount in controversy exceeds $75,000, this Court may properly exercise subject matter jurisdiction over the action. The Plaintiff's Motion to Remand will be denied.

## II. *Factual Background*

Plaintiff Bay Tobacco is a Virginia corporation with its principal place of business in Richmond, Virginia. MFJ ¶ 1. Defendant Bell Quality, a cigarette manufacturer, is a North Carolina limited liability company. *Id.* ¶¶ 3, 4. Defendant Continental, a cigarette distributor and competitor of the plaintiff, is a Florida limited liability company. *Id.* ¶¶ 5, 6.

Bay is owned by Sandra W. Brent ("Brent") and Stan Beasley ("Beasley") and was officially formed on January 22, 2002. *Id.* ¶¶ 1, 10. Bay owns the "Chesapeake" brand of cigarette, a cigarette that was at one time manufactured by CIGTEC Tobacco, LLC in Charles City, Virginia. *Id.* ¶¶ 11, 13. In January of 2002, Plaintiff Bay contacted Defendant Bell to inquire about a manufacturing agreement. *Id.* ¶ 14. Subsequently, Bay and Bell entered into such an agreement (the "Agreement"). *Id.* ¶¶ 14, 16.

In the Agreement, Bay promised to manufacture the Chesapeake brand cigarette for Bay. *Id.* ¶ 14. The Agreement also required Bay to pre-pay fifty percent (50%) of each total invoice before Bell would commence manufacturing. *Id.* ¶ 17. Bay contends that Bell "ship[ped] Bay Tobacco's product to Virginia upon completion of production."[4] *Id.* Bell agreed to produce 5,099 master cases of cigarettes for Bay per twenty(20) day month at a total manufacturing cost of $5.85 per carton. *Id.* at ¶ 19.

On or about February 6, 2002, Bay placed its first order with Bell for 192 cases of Chesapeake "100s" and 96 cases of Chesapeake "Kings." *Id.* ¶ 23. Bay shipped the print materials to Bell to use in the manufacturing process. *Id.* ¶ 24. Bay alleges that Bell "filled the order and shipped [the] product to Virginia." *Id.* ¶ 26. These particular cigarettes sold at a profit, and from April through June 2002, Bay continued to place increased orders for the manufacture of additional Chesapeake cigarettes. *Id.* ¶¶ 27–34.

From July to September of 2002, Bay alleges that Bell lagged behind in production, consistently failing to produce the agreed-upon number of cases. *Id.* ¶¶ 35–

---

**4.** Defendant Bell denies, by affidavit, that it ships tobacco products directly to retailers in Virginia. Heflin Aff. ¶¶ 10–12. Instead, Bell contends that it contracts for the manufacture of tobacco products only. *Id.* In its reply memorandum and during oral argument, Bell submitted that while it produced all of Bay's cigarettes FOB Stantonsburg, North Carolina, at the request of and for the convenience of Bay Tobacco, it then arranged for the shipment of cigarettes into Virginia. *See* Tr. at 4, ll. 18–21; Tr. at 6, ll. 7–9, 20–22.

43. As a result, Bay missed out on potential sales and profits. *Id.* ¶ 43. Thereafter, from October to December of 2002, Bell failed to fill cigarette orders for Bay, giving such excuses as "the machines are down" and "we're really busy." *Id.* ¶ 44–49. As a result of the delays that occurred during those months, Bay's customers found new distributors. *Id.* ¶ 50.

In November of 2002, one of Bay's Virginia distributors, Cooper Booth ("Booth"), told Bay he heard Bay was going out of business. *Id.* ¶ 51. Bay then "discovered that Bell had secretly entered into an agreement with [*sic*] a Continental, and never had any intention of manufacturing any cigarettes for Bay Tobacco after September/October 2002." *Id.* ¶ 52. Bay alleges that as a part of this secret agreement Bell's owner, Jim Heflin, instructed Bell to manufacture only for Defendant Continental and not for Bay. *Id.* ¶ 53. Consequently, Plaintiff avers that Bell forced Bay out of business. *Id.* ¶ 54. Bay alleges that, since then, its packaging materials and other items of its personal property that are in the possession of Bell Quality have not been returned. *Id.* ¶¶ 24, 56.

### III. *Causes of Action*

Plaintiff asserts claims against Defendant Continental for civil and statutory conspiracy in violation of Va.Code §§ 18.2–499, –500 (Count I); tortious interference with business (Count II); and defamation (Count VI). In addition to Counts I, II and VI, Bay asserts claims against Defendant Bell including actual and constructive common law fraud (Count III); conversion (Count IV); violation of confidentiality (Count V); and breach of contract (Count VII).

### IV. *Defendants' Motions to Dismiss*

On February 10, 2003, each defendant filed a motion to dismiss for lack of personal jurisdiction and a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). This Court must resolve the jurisdictional issues before proceeding to the issue of whether the plaintiff has stated any valid causes of action. *See Steel Co. v. Citizens for a Better Env't,* 523 U.S. 83, 93–102, 118 S.Ct. 1003, 140 L.Ed.2d 210 (1998).

### A. *In Personam* Jurisdiction

■ As the Fourth Circuit has recognized, an analysis of personal jurisdiction is normally a two-step inquiry consisting of both statutory and constitutional components. *Peanut Corp. of Am. v. Hollywood Brands, Inc.,* 696 F.2d 311, 313 (4th Cir. 1982). In the instant action, because neither defendant is a resident of the Commonwealth of Virginia, the Court may only exercise jurisdiction if Plaintiff Bay Tobacco can establish, first, that each defendant's contacts with Virginia satisfy the Virginia long-arm statute (Va.Code § 8.01–328.1), and, second, that the statutory assertion of jurisdiction is consistent with the Due Process Clause of the Constitution (i.e., that the statute's reach, under the circumstances, does not exceed the Court's constitutional grasp). *See English & Smith v. Metzger,* 901 F.2d 36, 38 (4th Cir.1990).

■ When personal jurisdiction is challenged, as it is here, by a Rule 12(b)(2) motion to dismiss, the burden is on the plaintiff "to prove grounds for jurisdiction by a preponderance of the evidence." *Combs v. Bakker,* 886 F.2d 673, 676 (4th Cir.1989). If Plaintiff makes the requisite showing, the defendants then bear the burden of presenting a "compelling case" that, for other reasons, the exercise of jurisdiction would be so unfair as to violate due process. *Burger King v. Rudzewicz,* 471

U.S. 462, 477–78, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985).

■ "If the existence of jurisdiction turns on disputed factual questions the court may resolve the challenge on the basis of a separate evidentiary hearing or may defer ruling pending receipt at trial of evidence relevant to the jurisdictional question." *Combs*, 886 F.2d at 676. During the evidentiary proceeding, "a trial court may consider evidence by affidavit, depositions or live testimony without converting the proceeding to one for summary judgment." *Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir.1982) (setting forth the parameters for district court review of contested Rule 12(b)(1) subject matter jurisdiction). *See also Carter v. Trafalgar Tours, Ltd.*, 704 F.Supp. 673, 674–75 (W.D.Va.1989) (applying *Bain* to the analysis of Rule 12(b)(2) personal jurisdiction). For the purposes of a motion to dismiss, the reviewing court may presume that any uncontradicted evidence submitted by either party is true. *See id.*

1. Exercise of Jurisdiction under the Long–Arm Statute

■ The Court should begin its analysis by determining whether it can assume jurisdiction under the long-arm statute, the function of which is to assert jurisdiction over nonresidents who engage in some purposeful activity in Virginia, to the extent permissible under the Due Process Clause. *See Raymond, Colesar, Glaspy & Huss, P.C. v. Allied Capital Corp.*, 761 F.Supp. 423, 423 (E.D.Va.1991). To that end, Section 8.01–328.1(A) of the Code of Virginia (1950, as amended) states:

> A court may exercise personal jurisdiction over a person ... as to a cause of action arising from the person's:
>
> 1. Transacting any business in this Commonwealth;
>
> 2. Contracting to supply services or things in this Commonwealth;
>
> 3. Causing tortious injury by an act or omission in this Commonwealth;
>
> 4. Causing tortious injury in this Commonwealth by an act or omission outside this Commonwealth if he regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in this Commonwealth ....

Here, Plaintiff asserts that Defendants have availed themselves of this Court under subdivisions (1) and (4) of § 8.01–328.1 because they transacted substantial business in Virginia and conspired together *outside* the Commonwealth to defraud and destroy Plaintiff Bay Tobacco, a Virginia distributor. *See* Pl.'s Mem. in Supp. (of Mot. to Remand) and in Opp'n to Defs.' Mot. to Dismiss [hereinafter "Pl.'s Mem. in Opp'n"] at 4–6.[5] The Court must first

---

5. Although Plaintiff filed a memorandum arguing that this Court has personal jurisdiction over Defendants under subdivisions (A)(1) and/or (A)(4) of the long-arm statute, during oral argument Plaintiff's counsel asserted for the first time that this Court should exercise jurisdiction under subdivision (A)(3) of the statute. With much hesitation, the Court will briefly address this belated argument. The Court will note that Bay's new theory is nowhere addressed in the pleadings, and prior to the motions hearing neither opposing counsel nor the Court were provided the opportunity to prepare for this argument.

Plaintiff now contends that the Defendants vicariously engaged in a conspiracy *within* the Commonwealth in that they directed a Virginia agent to inform Bay's distributor, Booth, that Bay was "going out of business." Tr. at 12, 1. 22 to 15, 1. 18. As such, Plaintiff's counsel argues that Defendants are subject to *in personam* jurisdiction for causing injury in Virginia by a tort committed within Virginia. *Cf.* Pl.'s Mem. in Opp'n at 6 (alleging that "[t]he Defendants have caused tor-

determine, as to the seven claims asserted, whether Plaintiff has proved by a preponderance of the evidence that each arises out of the defendants' transaction of business within the Commonwealth and/or out of an injury caused in the Commonwealth by a tortious act performed outside the Commonwealth. Plaintiff does not specify which of the two mentioned subdivisions of the long-arm statute applies to which of its respective claims, therefore the Court will analyze each claim under both subdivisions.

### a. § 8.01–328.1(A)(1) Transacting Business in the Commonwealth

■ First, Plaintiff contemplates the extension of personal jurisdiction over defendants under the transacting business subdivision of the long-arm statute. This subdivision, (A)(1), gives the Court jurisdiction over ´ a non-resident party who transacts any business within the Commonwealth so long as the cause of action asserted arises from at least a single, purposeful transaction in Virginia. *Viers v. Mounts*, 466 F.Supp. 187, 190 (W.D.Va. 1979). Here, the only cause of action that may be viewed as arising out of the transaction of business in Virginia is the breach of contract claim (Count VII). As Plaintiff only asserts this claim against Defendant Bell Quality, the Court will only analyze the requirements of this subdivision of the long-arm as they apply to Bell's contacts with the Commonwealth.

### i. Formation of the Agreement

■ It is well-settled that even the single act of a non-resident within the Commonwealth may qualify as "transacting business," but a contract between a resident and a non-resident defendant does not, by itself, provide sufficient minimum contacts for personal jurisdiction. *America Online, Inc. v. Huang*, 106 F.Supp.2d 848, 855–56 (E.D.Va.2000) (citing *Ellicott Machine Corp., Inc., v. John Holland Party Ltd.*, 995 F.2d 474, 478 (4th Cir.1993)). Instead, where the single act alleged in support of jurisdiction is the consummation of a contract, the analysis depends upon (1) where the contract was negotiated and executed, (2) who initiated the contact, (3) the extent of the communications, both telephonic and written, between the parties, and (4) where the obligations of the parties under the contract were to be performed. *Affinity Memory & Micro, Inc. v. K & Q Enterprises*, 20 F.Supp.2d 948, 952 (E.D.Va.1998) (citing *Peanut*, 696 F.2d at 314 and *English & Smith*, 901 F.2d at 39).

With respect to the creation of the alleged contract, it is clear that Plaintiff initiated contact with Bell by telephone. Moreover, the Agreement called for performance, that is the manufacture of cigarettes, to take place in North Carolina. Although Plaintiff avers that it signed

---

tious injury in Virginia by a conspiracy and purposeful interference with contract *outside* the Commonwealth.").

Without deciding the merits of this newly-raised conspiracy claim, the Court must evaluate the evidence presented by the plaintiff to determine whether Bay has proved by a preponderance that this Court can exercise personal jurisdiction under subdivision (A)(3) of the long-arm statute. The only evidence Plaintiff submitted in support of its position, other than the skeletal facts sprinkled through its Motion for Judgment, is contained in the

Brent Affidavit. *See* Pl.'s Mem. in Opp'n at 46–49. After a careful review of both the Motion for Judgment and the Brent Affidavit, the Court finds that *nowhere* has Plaintiff offered *any* evidence that the Defendants acted in concert within the Commonwealth of Virginia, through an agent or otherwise, such that this Court may extend personal jurisdiction over these defendants under subdivision (A)(3) of the long-arm statute. Thus, the Court will decline to exercise jurisdiction under this subdivision.

(thereby executing) a contract in Virginia and sent it back to Bell, Bell alleges that the agreement was not executed at all. To date, neither party has provided the Court with a copy of the Agreement. Moreover, Plaintiff presented no evidence in support of its position that the Agreement was created in the Commonwealth. Thus, for the purposes of determining jurisdiction, the Court finds that Plaintiff has not proved this allegation by a preponderance of the evidence. The Court may not, therefore, exercise jurisdiction over Bay's contract claim based on the creation of the Agreement.

### ii. The Shipment of Cigarettes into the Commonwealth

Alternatively, Bay seems to rely on the fact that Bell arranged to ship Bay's cigarettes into the Commonwealth to prove that Bell transacted business in Virginia. Bay has offered no evidence to support this argument either.

On the other hand, Bell submitted evidence that it delivered Bay's cigarettes FOB Stantonsburg, North Carolina. Heflin Aff. ¶ 12. FOB, short for "free on board," is "[a] mercantile term denoting that the seller is responsible for delivering goods ... to the consignee at a specified location ...." Black's Law Dictionary 676 (7th ed.1999). "In an *F.O.B.* ('free on board') contract, the goods must be delivered on board by the seller, free of expense to the purchaser, and they are ... at the latter's risk [when] actually delivered on board, [which is] when the property in them passes to him." *Id.* (citation omitted). Accordingly, both title and risk of loss for the cigarettes passed to Bay in North Carolina.

Thus, this Court finds that Bell's FOB delivery of cigarettes to a common carrier in Stantonsburg, North Carolina for transport into Virginia diminishes the jurisdic-tional significance of such shipments. Plaintiff will not, and should not, be allowed to stretch Bell's business obligations into the Commonwealth simply by asking Bell to load its cigarettes on a tractor trailer bound for Virginia. Thus, based on the evidence before this Court, it is the Court's opinion that Bell's shipment of Bay's cigarettes into Virginia does not show that Bell transacted business in the Commonwealth, and the Court may not exercise jurisdiction over the contract claim on that basis. *See Chung v. NANA Dev. Corp.,* 783 F.2d 1124 (4th Cir.1986), *cert. denied.,* 479 U.S. 948, 107 S.Ct. 431, 93 L.Ed.2d 381 (1986) (holding that shipment into the forum state did not establish jurisdiction where the defendant appeared to have done everything possible to confine its business to its home state); *Ajax Realty Corp. v. J.F. Zook, Inc.,* 493 F.2d 818, 821 n. 4 (4th Cir.1972) (manufacturer who shipped goods directly to purchaser as accommodation to distributor did not "transact business" in the purchaser's state).

Because Bay has not proved, by a preponderance of the evidence, that its contract claim arises either out of the parties' formation of a contract in Virginia or Bell's transaction of business in Virginia, Bell's motion to dismiss the contract claim for lack of personal jurisdiction will be granted.

### b. § 8.01–328.1(A)(4) An act outside the Commonwealth that Causes Tortious Injury in Virginia

Second, the Court will consider whether it has jurisdiction over Counts I (statutory and common law conspiracy), II (tortious interference with business), III (common law fraud), IV (conversion), V (violation of confidentiality) and VI (defamation), all of which are torts alleged to have been committed outside the Commonwealth but purported to have caused Plaintiff Bay Tobac-

co to lose business in Virginia.[6] For the purposes of determining jurisdiction, the Court will begin by assuming, without deciding, that each of these claims is validly pled.

An analysis under subdivision (4) of the long-arm requires a three-step inquiry. First, the Plaintiff must aver that Defendants' tortious behavior outside the Commonwealth caused it injury within Virginia. Second, the Court must be persuaded that the cause of action arises out of the alleged tortious behavior. Finally, the Plaintiff must show that the defendant either regularly does business in the Commonwealth, engages in some persistent course of conduct in the Commonwealth, or derives substantial revenue from goods used or consumed in the Commonwealth.

For each of these claims filed against the defendants, it is relatively clear that the plaintiff avers a tort, whether it be the alleged conspiracy, the tortious interference, the fraud, the conversion or the violation of confidentiality, that occurred in North Carolina and/or Florida and that proximately caused a loss of business in Virginia. This satisfies the first two elements of the inquiry. The Court must then turn to each defendant's contacts with Virginia and to determine whether either Bell and/or Continental regularly does business in the Commonwealth, engages in some persistent course of conduct in the Commonwealth, or derives substantial revenue from goods used or consumed in the Commonwealth.

i. Defendant Bell Quality

 Defendant Bell Quality has no business presence in Virginia. *See* Heflin Aff. Bell's principal place of business is Stantonsburg, North Carolina. *Id.* ¶ 3. It

does not advertise in Virginia. *Id.* ¶ 8. Bell employs no sales people in the Commonwealth, nor does it own real property in the Commonwealth. *Id.* ¶¶ 4, 6. Bell has no offices or facilities in Virginia and has no phone listing in Virginia. *Id.* ¶ 4. It is undisputed that Bell has "never set foot in Virginia." *See* Tr. p13, lines 21–24; p14, lines 15–17.

It is also uncontroverted that Bell's products were manufactured in North Carolina and delivered FOB Stantonsburg, North Carolina. Although Bay argues that Bell regularly shipped Bay's cigarettes into the Commonwealth, the Court has already decided that these shipments were not purposefully directed contacts but were fortuitous contacts, made at Bay's request and for Bay's convenience. Consequently, the Court finds that Bay has not proved, by a preponderance of the evidence, that Bell either regularly conducted business in the Commonwealth or engaged in a "persistent course of conduct" in the Commonwealth. Thus, the only inquiry left for the Court is whether Bell derived substantial revenue from the cigarettes it manufactured for Bay that ultimately were sold or consumed in Virginia.

Although no court has established an absolute dollar amount that satisfies the "substantial revenue" requirement, courts have generally found that the amount must exceed $300. *DeSantis v. Hafner Creations, Inc.,* 949 F.Supp. 419, 427–27 (E.D.Va.1996). *See also, Ajax Realty,* 493 F.2d at 821–22 (finding that $37,000 constituted substantial revenue for purposes of subsection (A)(5)); *Processing Research, Inc. v. Larson,* 686 F.Supp. 119, 122 (E.D.Va.1988) (holding that $119,850 re-

---

**6.** As to Plaintiff's argument regarding torts committed by Defendants' acts within the

Commonwealth, see note 5.

ceived by defendant for the sale of an aircraft satisfied the substantial revenue provision); *Jackson v. National Linen Serv. Corp.*, 248 F.Supp. 962, 965 (W.D.Va. 1965) (determining that $25,000 was sufficient to meet the substantial revenue test).

Moreover, "[c]ertain factors of the 'substantial revenue' tests have been established: 1) that revenue derived from sales, and not profits, must be substantial, 2) that the revenue may be derived from a single transaction; and 3) that the sale itself need not take place in Virginia so long as the goods are used or consumed in this state." *Gordonsville Indus., Inc. v. American Artos Corp.*, 549 F.Supp. 200, 203 (W.D.Va.1982). The Court may also consider the percentage of total sales of the nonresident corporation that occur in Virginia. *Id.*

Here, the Court has no evidence relating to Bell's overall sales in Virginia. What the Court knows from Bay's Motion for Judgment is that Bay ordered at least 1,572 cases of cigarettes from Bell. *See* MFJ ¶¶ 23, 30–34, 36, 37, 39. Bell delivered at least 859 of those cases ordered. *See Id.* ¶¶ 26, 36, 38, 40. According to the pleading, Bay paid $ 5.85 per carton of cigarettes. *Id.* ¶ 19. Doing the math, it appears that there are sixty (60) cartons in each case. *See Id.* ¶ 23. Consequently, from the evidence submitted in the pleadings, it appears that Bell derived at least $301,509 in revenue from the sale of cigarettes to Bay for distribution and sale within the Commonwealth. The Court finds therefore, by a preponderance of the evidence, that Bell garnered "substantial revenue" from Bay's purchase of cigarettes for distribution in Virginia. Thus, Bay has satisfied the requirements of the long-arm statute with respect to its tort claims against Bell.

ii. Defendant Continental

■ Continental's contacts with Virginia are similar to Bell's. Continental is a Florida limited liability company, that also has no physical presence in Virginia. *See* White Aff. ¶¶ 3, 5–7. Unlike Bell, however, in 2002 Continental sold and shipped approximately two percent (2 %) of its cigarettes into and within the Commonwealth. *Id.* ¶ 12. Although it is unclear as to how much revenue Continental's Virginia sales generated, the Court finds that this sales percentage, taken with the fact that such sales and shipments likely qualify as the regular transaction of business in the Commonwealth, satisfies the jurisdictional requirements of subdivision (A)(4) of the long-arm statute.

But the analysis does not end here. For this Court to extend its reach to include Bell Quality and Continental, Bay must not only meet the requirements of the long-arm statute, it must also prove that this Court's exercise of personal jurisdiction would not violate the due process requirements of the United States Constitution.

2. Constitutional Due Process.

■ Although it is well-settled that a defendant need not be physically present in the state for a court to exercise jurisdiction, each defendant must at least have "minimum contacts" with the forum state in order to satisfy the Due Process clause of the United States Constitution. *Omni Capital Int'l Ltd. v. Rudolf Wolff & Co.*, 484 U.S. 97, 102–03, 108 S.Ct. 404, 98 L.Ed.2d 415 (1987); *World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 291, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980); *Hanson v. Denckla*, 357 U.S. 235, 250–51, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958); *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945); *Stover v. O'Connell Assocs., Inc.*, 84 F.3d 132, 136

(4th Cir.1996); *Nichols v. G.D. Searle & Co.*, 991 F.2d 1195, 1199 (4th Cir.1993).

■ More specifically, the action initiated by each defendant that gives rise to personal jurisdiction must be "purposefully directed" at the forum, creating a "substantial connection" with that state. *Burger King*, 471 U.S. at 475–76, 105 S.Ct. 2174. In other words, due process requires sufficient contacts with the forum state that a defendant "should reasonably anticipate being hauled into court there." *World–Wide Volkswagen*, 444 U.S. at 297, 100 S.Ct. 559. In the context of due process analysis, the courts have distinguished between the exercise of general and of specific jurisdiction. *See ESAB Group, Inc. v. Centricut, Inc.*, 126 F.3d 617, 624 (4th Cir.1997). Consequently, the Court must first decide whether the defendants' alleged wrongful actions, assuming *arguendo* Plaintiff's allegations are true, fall under the category of general or of specific jurisdiction.

■ Here, the Court has found that, as pled, Plaintiff's tort claims arise only out of the defendants' alleged activities *outside* of Virginia.[7] When "a suit does not arise out of the defendant's activities in the forum state, the court must exercise 'general jurisdiction' and the requisite 'minimum contacts' between the defendant and the forum state are 'fairly extensive.'" *Nichols*, 991 F.2d at 1199 (citation omitted). In such cases, each defendant's contacts with the forum state must be "continuous and systematic." *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 416, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984). Consequently, this Court must determine whether it may exercise general jurisdiction over Bell and Continental, meaning Bay must prove that each defendant has fairly extensive, continuous, and systematic contacts with Virginia.

■ As previously mentioned, without evidence that Bell regularly shipped cigarettes to Bay in Virginia, it is relatively clear that Bell intended to confine its responsibilities to its home state of North Carolina. Bay has produced no evidence whatsoever to prove that Bell purposefully directed its activities toward Virginia such that it could reasonably expect to be haled into a Virginia court. Any causes of action Bay may have had against Defendant Bell Quality, would have been better pled in a North Carolina court. Consequently, the Court finds that Bell does not have sufficient contacts with Virginia to satisfy the Due Process Clause of the United States Constitution and to warrant the exercise of general *in personam* jurisdiction over Plaintiff Bell Quality. Consequently, the Court will grant Bell's motion to dismiss Bay's tort claims for lack of personal jurisdiction.

■ On the other hand, the Court is convinced that Plaintiff Continental transacted a fair amount of business in Virginia and derived substantial revenue therefrom. What the Court knows about Continental's contact with Virginia is that, over a period of time, Continental shipped its product directly into the Commonwealth anticipating that it would be sold to Virginia consumers. Thus, it appears that Continental purposefully directed its business activities toward Virginia and could reasonably expect that it might be subject to jurisdiction

---

**7.** Again, although Plaintiff raised a new theory at oral argument suggesting that the defendants committed a tort or torts in Virginia by tortious activity committed *within* the Commonwealth, the Court has found that Bay failed to prove this theory by failing to provide the Court with *any* evidence in support thereof. Consequently, Plaintiff's argument regarding the "effects test," which is pertinent to an analysis of specific jurisdiction, is both irrelevant and unnecessary, and the Court will not consider it.

in the Commonwealth. The Court finds that it does not offend the due process protections of the Constitution to exercise personal jurisdiction over Continental, therefore the Court will deny Continental's Rule 12(b)(2) motion to dismiss.

### B. Continental's Motion to Dismiss for Failure to State a Claim under Rule 12(b)(6)

Pursuant to Federal Rule of Civil Procedure 12(b)(6), dismissal is appropriate any time a plaintiff "fail[s] to state a claim on which relief can be granted." A dismissal pursuant to Rule 12(b)(6) should only be awarded when "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief." *Martin Marietta Corp. v. International Telecomms. Satellite Org.*, 991 F.2d 94, 97 (4th Cir.1993) (quoting *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)); *accord McNair v. Lend Lease Trucks, Inc.*, 95 F.3d 325, 328 (4th Cir.1996) (*en banc*).

■■■■■ Here, Defendant Continental filed an affidavit in support of its argument that this Court lacks *in personam* jurisdiction. *See* White Aff. Plaintiff Bay Tobacco also filed an affidavit that briefly touches upon jurisdictional issues. *See* Brent Aff. A Rule 12(b)(6) motion to dismiss that is supported by affidavits cannot be regarded as one for summary judgment unless the district court acts to convert the motion by notifying the parties in advance of its intent to do so and by noting that it will consider the supporting extraneous materials in its analysis of the motion. *Finley Lines v. Norfolk Southern Corp.*, 109 F.3d 993, 996 (4th Cir.1997). Unless it intends to treat the motion as one for summary judgment pursuant to Federal Rule of Civil Procedure 56, the Court should expressly exclude any attached, supporting materials. *Id.*

During the motions hearing, the Court specifically informed the parties that it would not convert the motions to dismiss into Rule 56 motions. The Court also advised that it would not consider the affidavits in the Court's Rule 12(b)(6) analysis. Consequently, when reviewing Continental's motion to dismiss, the Court will accept the plaintiff's factual allegations as true and view the allegations in the light most favorable to the plaintiff. *Martin Marietta*, 991 F.2d at 97 (citing *Jenkins v. McKeithen*, 395 U.S. 411, 421–22, 89 S.Ct. 1843, 23 L.Ed.2d 404 (1969)). *See also Hishon v. King & Spalding*, 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984); *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir.1993). By the same token, the court will not assume that the plaintiff can prove facts that are not alleged or that the defendants have violated the law in ways that have not been alleged. *Estate Constr. Co. v. Miller & Smith Holding Co.*, 14 F.3d 213, 221 (4th Cir.1994) (citation omitted). Within this frame of reference, the Court will analyze Continental's motion as it relates to each of Bay's tort claims against it.

### 1. Count I Common Law and Statutory Conspiracy

■■■■ In sum, Plaintiff's conspiracy claim against Continental alleges that Bell and Continental intentionally "combined, associated, agreed or acted in concert" to put Bay out of business. MFJ ¶ 58. To this end, Bay avers that in November of 2002 one of its owners "heard from one [its] own distributors, Cooper Booth, that Bay was 'going out of business.'" *Id.* ¶ 51. Subsequently, Bay learned that Bell had "secretly entered into an agreement with [*sic*] a Continental" to produce cigarettes for Continental instead of Bay. *Id.* ¶ 52. "Continental knew that ... by publishing false and defamatory statements that Bay

Tobacco was going out of business, Bay ... would lose customers." *Id.* Moreover, Bay's owner was told that Bell's owner, Jim Heflin, had instructed Bell to stop producing for Bay and to produce only for Continental. *Id.* ¶ 53.

Plaintiff then avers that these facts, when added together, amount to the defendants' commission of both common law and statutory conspiracy. That is to say, Bay avers that (1) Bell's misrepresentation of its intent to manufacture for Bay, (2) Bell's delay in production, (3) Continental's publication of the statement that Bay was "going out of business," and (4) the Defendants' withholding of Bay's packaging materials, taken together, prove that the two defendants conspired to destroy Bay's business.[8] *Id.* ¶¶ 58–60. On the pleadings, this count is woefully inadequate.

■■■ Section 18.2–499 of the Virginia Code imposes criminal liability upon "[a]ny two or more persons who shall combine, associate, agree, mutually undertake or concert together for the purpose of willfully and maliciously injuring another in his reputation, trade, business, or profession by any means whatsoever." Va.Code § 18.2–499 (1950, as amended). Section 18.2–500 of the Virginia Code (1950, as amended) imposes civil liability for such conduct. Likewise, according to Virginia common law, a civil conspiracy is a combination of two or more persons, by some concerted action, to accomplish some criminal or unlawful purpose or to accomplish some purpose not in itself criminal or unlawful by criminal or unlawful means. *Hechler Chevrolet, Inc. v. General Motors Corp.,* 230 Va. 396, 402, 337 S.E.2d 744 (1985) (citing *Werth v. Fire Adjust. Bu-*

*reau,* 160 Va. 845, 855, 171 S.E. 255 (1933)).

■■■ Under either theory of recovery, the plaintiff must first allege that the defendants combined together to effect a "preconceived plan and unity of design and purpose, for the common design is the essence of the conspiracy." *Bull v. Logetronics, Inc.,* 323 F.Supp. 115, 131 (E.D.Va.1971) (citations omitted). Consequently, in order to survive a motion to dismiss, Plaintiff must at least plead the requisite concert of action and unity of purpose in more than "mere conclusory language." *Lewis v. Gupta,* 54 F.Supp.2d 611, 618 (E.D.Va.1999) (citing *Bowman v. State Bank of Keysville,* 229 Va. 534, 331 S.E.2d 797 (1985) (a conspiracy claim asserted in mere conclusory language is based on inferences that are not fairly and justly drawn from the facts alleged)). In addition, to survive a motion to dismiss, an allegation of conspiracy must include either an unlawful act or an unlawful purpose.

Plaintiff's pleading fails to allege a number of the required elements of conspiracy. For example, although Bay alleges certain actions by Bell and others by Continental, the only concerted action Bay avers is the defendants' entry into a "secret" agreement that Bell would begin to produce for Continental instead of Bay. Of course, there can be no conspiracy to do an act, such as the formation of an agreement to produce, that the law allows. *Hechler,* 230 Va. at 402, 337 S.E.2d 744 (citation omitted). Because Bay has failed to aver an unlawful act, the next question is whether Bay has properly alleged that the conspir-

---

8. As to Bay's reckless accusation that Continental is somehow involved in the conversion of its property, the Court will note that Plaintiff pleadings fail to support such an allegation. Count IV of the Motion for Judgment alleges that Bell, not Continental, converted Bay's property. MFJ ¶¶ 77–83. Therefore, the Court will disregard any such accusation with respect to Continental.

ators acted together for some unlawful purpose.

The Virginia Supreme Court recognizes a cause of action for conspiracy to induce the breach of a contract, the same accusation Bay makes in Count I of its complaint. *Worrie v. Boze,* 198 Va. 533, 537, 95 S.E.2d 192 (1956). And although the Court accepts Plaintiff's factual allegations as true, the Court will not assume that Bay can prove facts that are not alleged. In the instant action, Bay fails to plead even a single fact relating to Continental's alleged attempt to interfere with the Bell–Bay Agreement.

Thus, the Court finds that Bay has shown no affirmative evidence in support of its conspiracy accusation. The Court is further of the opinion that Bay has not properly alleged that Continental employed unlawful means in carrying out the alleged conspiracy, or that Continental conspired with Bell for an unlawful purpose. Consequently, it appears to a certainty that Bay would be entitled to no relief under any facts that could be proved in support of its conspiracy claim, as pled, and the Court will grant Defendant Continental's 12(b)(6) motion to dismiss Count I of Bay's complaint, without prejudice.

### 2. Count II Tortious Interference with Business

■■■■■ As summarized by the Virginia Supreme Court, the elements of tortious interference with contract are "(1) the existence of a business relationship or expectancy, with a probability of future economic benefit to plaintiff; (2) defendant's knowledge of the relationship or expectancy; (3) a reasonable certainty that absent

defendant's intentional misconduct, plaintiff would have continued in the relationship or realized the expectancy; and (4) damage to plaintiff." *Glass v. Glass,* 228 Va. 39, 51–52, 321 S.E.2d 69 (1984) (citation omitted). *See also Commerce Funding Corp. v. Worldwide Sec. Servs. Corp.,* 249 F.3d 204, 210 (4th Cir.2001) (citing *Chaves v. Johnson,* 230 Va. 112, 121, 335 S.E.2d 97 (1985)). Virginia law further distinguishes between contracts that are fixed and those, like the Bell–Bay Agreement, that are terminable at will. *See Duggin v. Adams,* 234 Va. 221, 226, 360 S.E.2d 832 (1987). This distinction can be summarized with the following: the extent of permissible interference that Virginia will allow increases as the degree of enforceability of a business relationship decreases. *Id.*

■■■■ In Count II of its Motion for Judgment, Bay makes the generalized assertion that Continental knew "of [Bay's] contracts and substantial business expectancies" and that Continental knew about Bay's contract with Bell. MFJ ¶¶ 64, 65. Bay then alleges that Continental interfered with Bay's "contracts and business expectancies" by making an allegedly defamatory statement and "intentionally and illegally interfered with [Bay's] manufacturing contract[ ] with Bell."[9] *Id.* ¶¶ 66, 67. This claim is riddled with deficiencies such that the Court will only devote a paragraph or two to its analysis.

As for the first part of this accusation, Bay neither identifies with which of its customer contracts Continental meddled, presuming for the purposes of argument that customer contracts are those to which it refers, nor does it provide any support

---

**9.** Bay's shallow accusation that Continental interfered through such actions as fraud, unfair competition and disclosure of confidential information does not advance their argument. Bay does not aver that Continental is liable

for such behavior anywhere else in the Motion for Judgment, and it cannot extrapolate its averred causes of action against Defendant Bell in support of its tortious interference claim against Continental.

for its contention that this interference-by-defamatory statement induced or caused a breach of any particular business expectancy. See *Wright v. Castles,* 232 Va. 218, 224, 349 S.E.2d 125 (1986) (to prove tortious interference with a terminable-at-will contract, the plaintiff must show that the defendant intentionally and improperly interfered with his contractual rights by causing a third party not to enter a prospective contract with him).

As to the allegation that Continental tortiously interfered with the Bell–Bay Agreement, Bay fails to mention how, when, and/or where Continental is alleged to have interfered. *See Duggin,* 234 Va. at 226–27, 360 S.E.2d 832 ("when a contract is *terminable at will,* a plaintiff, in order to present a prima facie case of tortious interference, must allege and prove not only an *intentional* interference that caused the termination of the at-will contract, but also that the defendant employed '*improper* methods'" (citation omitted)(emphasis in original)). Because Bay cannot prove facts it does not allege, the Court finds that Count II of Bay's Motion for Judgment fails to state a claim upon which relief may be granted and will grant Continental's motion to dismiss it under Federal Rule of Civil Procedure 12(b)(6), without prejudice.

### 3. Count VI Defamation

 In Virginia, the elements of libel are (1) publication of (2) an actionable statement with (3) the requisite intent. *See generally, Gazette, Inc. v. Harris,* 229 Va. 1, 15, 325 S.E.2d 713 (1985). To be "actionable," the statement must be not only false, but also defamatory, that is, it must "tend[ ] so to harm the reputation of another as to lower him in the estimation of the community or to deter third persons from associating or dealing with him." Restatement (Second) of Torts § 559. Whether a statement is actionable is a

matter of law to be determined by the court. *Chaves v. Johnson,* 230 Va. 112, 119, 335 S.E.2d 97 (1985).

In Count VI of its Motion for Judgment, Bay alleges that Continental "published untruthful and slanderous comments about Bay Tobacco and its business to distributors and customers" [when] ... Continental stated that Bay Tobacco was "going out of business." MFJ ¶ 95. Bay's support for its accusation appears in paragraph fifty-one (51) of the Motion for Judgment, where Bay states, "In November [of 2002]", Brent heard from one of Bay Tobacco's own distributors, Cooper Booth, that Bay was going "out of business." Bay further avers that, at the time the statement was made, it was still placing orders with Defendant Bell and urgently requested their shipment. *Id.* ¶¶ 44, 47. Thus, Bay contends, Continental's statement that Bay was "going out of business" amounts to defamation *per se* that prejudiced it in the eyes of the industry. *Id.* ¶ 97.

 Under Virginia law, it is defamation *per se* to make false statements that "prejudice [a] person in his or her profession or trade." *Great Coastal Express v. Ellington,* 230 Va. 142, 146–47, 334 S.E.2d 846 (1985). A corporation may be defamed *per se* by statements that "cast aspersion on its honesty, credit, efficiency or its prestige or standing in its field of business." *General Prods. v. Meredith Corp.,* 526 F.Supp. 546, 549–50 (E.D.Va. 1981) (citing Restatement (Second) of Torts, §§ 561, 573 (1976)). If a plaintiff establishes a claim for defamation *per se,* Virginia law presumes that the plaintiff suffered actual damage to its reputation and, therefore, the complainant does not have to present proof of such damages. *Fleming v. Moore,* 221 Va. 884, 889, 275 S.E.2d 632 (1981).

Although this cause of action is razor-thin as pled, Plaintiff has averred that

Continental published a statement that Bay was "going out of business" to its customers and distributors knowing that statement was false. Taking all inferences in favor of the plaintiff, the Court finds that Count IV of the Motion for Judgment is sufficiently pled and survives Continental's Rule 12(b)(6) Motion. As to this count, then, the Court will deny Continental's motion to dismiss.

An appropriate order will accompany this opinion.

The Clerk is directed to send a copy of this Memorandum Opinion to all counsel of record.

It is SO ORDERED.

### ORDER

THIS MATTER came before the Court on April 11, 2003 on Plaintiff's Motion to Remand and on Defendants' Fed.R.Civ.P. 12(b)(2) and 12(b)(6) motions to dismiss. In making its determinations, the Court has considered the pleadings, the relevant case law, and the parties' oral argument. For the reasons stated on the record and set forth in the accompanying memorandum opinion, the Court DISMISSES Plaintiff's Motion to Remand as moot.

With respect to the defendants' Fed. R.Civ.P. 12(b)(2) motions to dismiss, the Court finds that it may not exercise *in personam* jurisdiction over Defendant Bell Quality Tobacco Products, LLC ("Bell Quality"). The Court therefore GRANTS Defendant Bell Quality's Rule 12(b)(2) motion and DISMISSES all counts against it. The Court further finds that its exercise of jurisdiction over Defendant Continental Distribution, Inc. ("Continental") is proper. Thus, the Court DENIES Defendant Continental's 12(b)(2) motion to dismiss.

With respect to Continental's Fed. R.Civ.P. 12(b)(6) motion to dismiss, the Court finds that on Counts I and II of the

Motion for Judgment, Plaintiff has failed to plead a cause of action upon which relief may be granted. Accordingly, the Court DISMISSES Counts I and II without prejudice. The Court also finds that Plaintiff has pled a valid cause of action in Count VI of the Motion for Judgment. Consequently, Defendant Continental's Rule 12(b)(6) motion to dismiss is GRANTED as to Counts I and II of the Motion for Judgment and DENIED as to Count VI.

The Court GRANTS Plaintiff ten (10) days' LEAVE to file an amended Motion for Judgment with respect to Counts I and II as originally pled against Defendant Continental.

It is so ORDERED.

Let the Clerk send a copy of this Order to all counsel of record.