# CIRCUIT COURT OF THE CITY OF CHARLOTTESVILLE

Barry J. Kayes
and Gail Kristine Jensen

v.

Arthur B. Keyser et al.

March 8, 2007

Case No. CL06-313

By Judge Edward L. Hogshire

On August 25, 2006, Barry J. Kayes and Gail Kristine Jensen filed a Motion for Judgment ("MFJ") against Arthur B. Keyser and Sue C. Keyser, and Carlton Bridge, Inc. ("CBI") and Ivy Realty Corporation ("Ivy"), both terminated Virginia corporations for which Mr. Keyser was the former Registered Agent, Director, and Shareholder, claiming breach of warranty, actual and constructive fraud, breach of contract, and statutory and common law conspiracy. The Keysers' demurrers[1] to several counts of the MFJ give rise to the issues presently before the Court. For the reasons stated below, the Court overrules the Keysers' demurrer as to Count I and sustains their demurrer as to Counts V and VI.

## Standard of Review

For the purposes of a demurrer, the facts as stated in Plaintiffs' Motion for Judgment, along with the attached exhibits, will be taken as true and correct. *Flippo v. F & L Land Co.*, 241 Va. 15, 17 (1991). The facts admitted

---

[1] The demurrer was filed on behalf of the Keysers personally and as successors in interest to CBI and Ivy.

are those expressly alleged, those that fairly can be viewed as impliedly alleged, and those that may fairly and justly be inferred from the facts alleged. *Rosillo v. Winters*, 235 Va. 268, 270 (1988) (quoting *Ames v. American National Bank*, 163 Va. 1, 37 (1934)). As long as a claim contains sufficient allegations of material fact to inform the respondent of its true nature and character, it will withstand demurrer. *CaterCorp, Inc. v. Catering Concepts, Inc.*, 246 Va. 22, 24 (1993). However, a demurrer will be sustained when the pleading does not state a cause of action or fails to state facts upon which the relief demanded can be granted. Va. Code § 8.01-273.

## Statement of Facts

On August 31, 2001, Barry J. Kayes and Gail Kristine Jensen purchased a 47-unit condominium building from defendant CBI. (MFJ, ¶ 24.) The building was one of two that comprised the Carlton Bridge Condominium ("Carlton Bridge") (MFJ, ¶ 11), a complex that was developed and constructed by the Keysers and CBI in the mid-1980s (MFJ, ¶ 10) and subsequently marketed by the Keysers and Ivy (MFJ, ¶ 12). Carlton Bridge was made up of two buildings: Carlton Bridge South ("CBS"), a 35-unit building sold piecemeal over the course of several years (MFJ, ¶¶ 11, 13), and Carlton Bridge North ("CBN"), a 47-unit building that remained wholly titled to CBI, as Declarant, until its sale to the plaintiffs (MFJ, ¶¶ 11, 15).

In response to a newspaper advertisement that ran in the summer of 2001, the plaintiffs contacted Mr. Keyser to express an interest in purchasing CBN. (MFJ, ¶¶ 17–18.) During subsequent discussions, Mr. Keyser made a variety of factual representations, both orally and in writing, concerning the physical and financial condition of the property. (MFJ, ¶¶ 19–20, 22.) In reliance upon these statements, the plaintiffs thereafter purchased CBN for $2,350,000 and obtained rights to other common areas of the two buildings. (MFJ, ¶¶ 24, 27.)

After purchasing the property, the plaintiffs discovered "massive and pervasive structural defects and failures" at both CBS and CBN, rendering portions of both buildings unusable or uninhabitable (MFJ, ¶ 39) and requiring substantial investment and repair (MFJ, ¶¶ 40–41, 43). In addition, they discovered that the Keysers, while controlling the Carlton Bridge Owners' Association ("CBOA"), failed to maintain records of the association's finances and neither filed tax returns nor paid taxes on the association's income from 1986 to 2000 (MFJ, ¶ 38), resulting in an assessment against the plaintiffs of $42,000 in taxes, penalties, and fees (MFJ, ¶ 42).

According to the plaintiffs, while negotiating the sale of CBN, Mr. Keyser was well-aware of the "abhorrent" condition of the property, admitting as much in prior correspondence with an unnamed third party. (MFJ, ¶ 44.) Moreover, after the sale, as the extent of the problems with the property became known to the plaintiffs, Mr. Keyser permitted the plaintiffs to withhold $10,000 from each $15,379 monthly payment to be made to Keyser pursuant to the sales agreement in order to help "make them whole." (MFJ, ¶ 45–46, Exhibit 3, ¶ 3a.) Nonetheless, the plaintiffs seek both compensatory and punitive damages in excess of $4,900,000.

## Analysis

### Count I: Breach of Warranty by the Keysers and CBI

In Count I of their Motion for Judgment, the plaintiffs assert that, pursuant to Virginia Code § 55-79.79, CBI warranted to them that CBN was "free of structural defects" and "constructed in a workmanlike manner so as to pass without objection in the trade." (MFJ, ¶ 54). Although the defendants assert that many of the problems detailed in the plaintiffs' Motion for Judgment describe "maintenance" issues that are expressly excluded from the statutory warranty, see Va. Code Ann. § 55-79.79(B) ("Nothing in this subsection shall be construed to make the declarant responsible for any items of maintenance relating to the units or common elements."), at this stage in the proceedings, the plaintiffs have alleged sufficient facts to establish this cause of action. (See, e.g., MFJ, ¶¶ 39, 43 (alleging "structural defects and failures" which led to "excessive levels of moisture infiltration and wood rot" resulting in the "growth of toxic mold"); ¶ 40 (noting repairs that the plaintiffs have had to make to the building in order to render it "structurally sound").) That some of the alleged defects of the property may have arisen from "structural defects 'which were allowed … to go uncorrected' " (Defs' Br. in Supp. of Dem. at 2) does not prove that the problems were outside the bounds of the warranty; therefore, the Keysers' demurrer as to this count will be overruled.

### Count V: Statutory Conspiracy by the Keysers, CBI, and Ivy
### Count VI: Common Law Conspiracy by the Keysers, CBI, and Ivy

In Counts V and VI of their Motion for Judgment, the plaintiffs assert that the defendants "conspired for the purpose of willfully and maliciously injuring [the plaintiffs] in their business in violation of Virginia Code § 18.2-499" and the common law. (MFJ, ¶¶ 81, 88.) Contrary to the defendants'

assertion, no Virginia court has adopted a "heightened pleading standard of particularity" with respect to conspiracy claims. Indeed, all that is required by a plaintiff is that he allege "concerted action, legal malice, and causally related injury … set[ting] forth core facts to support the claim." *Atlantic Futon v. Tempur-Pedic, Inc.*, 67 Va. Cir. 269, 271 (2005). Nonetheless, "it is not enough for [a] plaintiff merely to track the language of the conspiracy statute without alleging the fact that the alleged co-conspirators did, in fact, agree to do something the statute forbids." *Johnson v. Kaugers*, 14 Va. Cir. 172, 177 (1988). "There should be some details of time and place and the alleged effect of the conspiracy." *Id.* at 176. Although the plaintiffs have claimed that certain conduct occurred in 2001 (MFJ, ¶ 17), in Charlottesville (MFJ, ¶ 8), and with respect to the sale of the condominium (MFJ, *passim*), there are no facts alleged to indicate that the defendants actually agreed to engage in fraudulent conduct with the purpose of injuring the plaintiffs. While it is true that "[d]ue to the nature of conspiracy, all details may not be known at the time of pleading," *Johnson*, 14 Va. Cir. at 176, in order to survive a demurrer, a plaintiff "must at least plead the requisite concert of action and unity of purpose in more than 'mere conclusory language'." *Bay Tobacco, L.L.C. v. Bell Quality Tobacco Prod., L.L.C.*, 261 F. Supp. 2d 483, 499 (E.D. Va. 2003) (quoting *Bowman v. State Bank of Keysville*, 229 Va. 534, 541 (1985)). As no conspiracy can exist without an agreement, *see Heacock v. Commonwealth*, 228 Va. 397, 407 (1984), the defendants' demurrers as to Counts V and VI will be sustained.

### Conclusion

For the foregoing reasons, defendants' demurrer will be sustained in part and overruled in part. Plaintiffs will be given leave to amend their complaint consistent with the above, with such amended complaint due on or before April 16, 2007.