# CIRCUIT COURT OF THE CITY OF CHARLOTTESVILLE

Carlton Bridge
Owners Assn.

v.

Arthur B. Keyser et al.

March 14, 2007

Case No. CL06-312

BY JUDGE EDWARD L. HOGSHIRE

On August 25, 2006 the Carlton Bridge Owners Association, Inc. ("CBOA") filed a Complaint ("Compl.") against Arthur B. Keyser and Sue C. Keyser (referred to collectively as the "Keysers"), and Carlton Bridge, Inc. ("CBI"), and Ivy Realty Corporation ("Ivy"), both terminated Virginia corporations for which Mr. Keyser was the former Registered Agent, Director, and Shareholder and Mrs. Keyser was a Director, claiming breach of warranty, breach of contract, breach of fiduciary duty, actual and constructive fraud, statutory and common law conspiracy, and violation of the Virginia Condominium Act. The Keysers' demurrer[1] to several counts of the Complaint gives rise to the issues presently before the Court. For the reasons stated below, the Court overrules the Keysers' demurrer as to Count I and sustains their demurrer as to Counts VI and VII.

---

[1] The demurrer was filed on behalf of the Keysers personally and as successors in interest to CBI and Ivy.

## Standard of Review

For the purposes of demurrer, the facts as stated in the Plaintiff's Complaint will be taken as true and correct. The facts admitted are those expressly alleged, those that fairly can be viewed as impliedly alleged, and those that may fairly and justly be inferred from the facts alleged. *Rosillo v. Winters*, 235 Va. 268, 270 (1988) (quoting *Ames v. American National Bank*, 163 Va. 1, 37 (1934)). As long as a claim contains sufficient allegations of material fact to inform the respondent of its true nature and character, it will withstand demurrer. *CaterCorp, Inc. v. Catering Concepts, Inc.*, 246 Va. 22, 24 (1993). However, a demurrer will be sustained when the pleading does not state a cause of action or fails to state facts upon which the relief demanded can be granted. Va. Code § 8.01-273.

## Statement of Facts

In the mid-1980s, the Keysers and CBI developed and constructed the Carlton Bridge Condominium ("Carlton Bridge"), an 84-unit complex composed of two buildings, Carlton Bridge South ("CBS") and Carlton Bridge North ("CBN"). (Compl., ¶¶ 5–6.) The project was marketed by the Keysers and Ivy, with units in CBS sold piecemeal over the course of several years, and with CBN remaining wholly titled to CBI, as Declarant, until its sale to Barry J. Kayes and Gail Kristine Jensen ("Kayes and Jensen") in August 2001. (Compl., ¶¶ 9–11.)

Kayes and Jensen purchased CBN due largely to their reliance on a variety of factual representations made by Mr. Keyser concerning the physical and financial condition of the property and the condominium's owners' association, CBOA. (Compl., ¶¶ 15–16, 18–19.) Specifically, Mr. Keyser claimed that the building was in "excellent condition" and had been managed and maintained "for decades ... without a secretary or crew." (Compl., ¶¶ 13, 15(i).) Mr. Keyser also asserted that he had been "the President of CBOA since its inception and maintained it as though he owned it all, spending the CBOA money as if it were his own." (Compl., ¶ 15(v).) Nonetheless, the association "had a $40,000 cash surplus [and] no outstanding bills," and thus "could meet its maintenance and repair obligations." (Compl., ¶¶ 15(vi), 50.) These same representations were made to the CBOA by Mr. Keyser throughout his negotiations with Kayes and Jensen. (Compl., ¶ 27.)

After obtaining title to CBN and rights to the common areas of both CBN and CBS, Kayes and Jensen, and through them the CBOA, discovered "massive and pervasive structural defects and failures" at both buildings,

rendering portions of both structures unusable or uninhabitable (Compl., ¶¶ 28–29) and requiring substantial investment and repair (Compl., ¶¶ 30–31, 33). In addition, they discovered that the Keysers, while controlling the CBOA, never held any regular meetings or elected officers, failed to maintain records of the association's finances, and neither filed tax returns nor paid taxes on the association's income from 1986 to 2000 (Compl., ¶ 26), resulting in an assessment of $42,000 in taxes, penalties, and fees (Compl., ¶ 32).

According to the plaintiffs, while negotiating the sale of CBN, Mr. Keyser was aware that his factual representations concerning the property were "materially false and misleading, and were made ... with the intention that Kayes and Jensen, and the CBOA would rely on them." (Compl., ¶ 34.) Thus, the plaintiffs seek both compensatory and punitive damages in excess of $ 5,000,000.

*Analysis*

*Count I: Breach of Warranty by the Keysers and CBI*

In Count I of its Complaint, the plaintiff asserts that pursuant to Virginia Code § 55-79.79, CBI warranted to all purchasers that "the units and common areas [of Carlton Bridge] were free of structural defects and constructed in a workmanlike manner so as to pass without objection in the trade." (Compl., ¶ 39.) Under Virginia Code § 55-79.80(B), the CBOA may assert a claim for breach of this warranty as to the common areas and elements.

However, as the defendants have pointed out, with regard to the common elements of a condominium, Virginia Code § 55-79.79 warrants only that they will be free of structural defects and not that they will also be "constructed in a workmanlike manner." To the extent that the plaintiff's Complaint suggests that common elements are warranted under both standards, the Keysers' demurrer is sustained. However, insofar as the plaintiff has acknowledged that it can only seek recovery under this statute for issues associated with the common areas and elements (Compl., ¶ 41), and as the plaintiff has alleged specific structural defects of these areas giving rise to their cause of action (Compl., ¶¶ 30–31, 33), their claim as a whole survives demurrer.

In addition, although the defendants assert that many of the problems detailed in the plaintiff's Complaint describe "maintenance" issues that are expressly excluded from the statutory warranty, *see* Va. Code Ann. § 55-79.79(B) ("Nothing in this subsection shall be construed to make the

declarant responsible for any items of maintenance relating to the units or common elements."), at this stage in the proceedings, the plaintiffs have alleged sufficient facts to establish this cause of action. (*See, e.g.*, Compl., ¶ 30 (detailing previous and ongoing repairs to "[l]arge sections of the roofs, walls, windows, balconies, and stairs" in order to render the common areas of CBN and CBS "structurally sound"); ¶ 31 (noting claims asserted against the CBOA by association members for "damages allegedly suffered as a result of failures or defects in the common elements of the development. . . .").) Although subsequent claims in the plaintiff's Complaint do expressly involve allegations of defective maintenance performed by Mr. Keyser (Compl., ¶¶ 45, 48), those allegations do not detract from the facts alleged in support of this specific claim; therefore, the Keysers' demurrer as to this count will be overruled.

*Count VI: Statutory Conspiracy by the Keysers, CBI, and Ivy*
*Count VII: Common Law Conspiracy by the Keysers, CBI, and Ivy*

In Counts VI and VII of its Complaint, the plaintiff asserts that the defendants "conspired to injure the CBOA in its business." (Compl., ¶¶ 61, 65.) Contrary to the defendants' assertion, no Virginia court has adopted a "heightened pleading standard of particularity" with respect to conspiracy claims. Indeed, all that is required by a plaintiff is that he allege "concerted action, legal malice, and causally related injury … set[ting] forth core facts to support the claim." *Atlantic Futon v. Tempur-Pedic, Inc.*, 67 Va. Cir. 269, 271 (2005). Nonetheless, "it is not enough for [a] plaintiff merely to track the language of the conspiracy statute without alleging the fact that the alleged co-conspirators did, in fact, agree to do something the statute forbids." *Johnson v. Kaugers*, 14 Va. Cir. 172, 177 (1988). "There should be some details of time and place and the alleged effect of the conspiracy." *Id.* at 176.

Although the plaintiff has claimed that the Keysers were motivated by personal gain to enter into a conspiracy (Compl., ¶¶ 62, 66), there are no facts alleged to indicate that the individual and corporate defendants actually agreed to engage in unlawful conduct with the purpose of injuring the plaintiff. While it is true that, "[d]ue to the nature of conspiracy, all details may not be known at the time of pleading," *Johnson*, 14 Va. Cir. at 176, in order to survive demurrer, a plaintiff "must at least plead the requisite concert of action and unity of purpose in more than 'mere conclusory language'." *Bay Tobacco, L.L.C. v. Bell Quality Tobacco Prod., L.L.C.*, 261 F. Supp. 2d 483, 499 (E.D. Va. 2003) (quoting *Bowman v. State Bank of Keysville*, 229 Va. 534, 541

(1985)). As no conspiracy can exist without an agreement, *see Heacock v. Commonwealth*, 228 Va. 397, 407 (1984), the defendants' demurrers as to Counts VI and VII will be sustained.

## Conclusion

For the foregoing reasons, defendants' demurrer will be sustained in part and overruled in part. Plaintiff will be given leave to amend its complaint consistent with the above, with such amended complaint due on or before April 16, 2007.